[No. 12217.   Department Two.   August 14, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Seattle &
Lake Washington Waterway Company, Plaintiff*, v.
THE SUPERIOR COURT FOR KING COUNTY,
*Respondent.*[1]

CORPORATIONS—ACTIONS AGAINST—VENUE—"TRANSACTING BUSI-
NESS"—ACTS OF AGENT—PRINCIPAL AND AGENT.   A waterway com-
pany, having state contracts for filling state tide lands, is not, as
between the parties, an agent of a trust company, with whom it
contracted for floating the state certificates received in payment of
the fills, so as to make its acts under the contract with the trust
company (such as sending out notices, making collections and re-
mitting the proceeds, performed in King county) the acts of the
trust company, having its domicile and transacting its business in
Spokane county; and the trust company is not "transacting business"
in King county by reason of the acts of the waterway company in per-
forming such contract, within the meaning of Rem. & Bal. Code,
§ 206, authorizing a corporation to be sued in any county in which
it is "transacting business" at the time; although the trust com-
pany's officers were frequently temporarily in King county to con-
sult with the waterway company concerning the certificates; since
the contract between them for floating the bonds was an independent
contract creating no relation of principal and agent.

Certiorari to review an order of the superior court for
King county, Mackintosh, J., entered August 7, 1914, grant-
ing a change of venue.   Affirmed.

*Donworth & Todd*, for relator.

*Graves, Kizer & Graves*, for respondent.

PER CURIAM.—This is a proceeding in review of an order
of the superior court of King county granting a change of
venue.

The facts are these:   Pursuant to the act of the legisla-
ture of the state of Washington, approved March 9, 1893
(Laws 1893, p. 241; Rem. & Bal. Code, § 8100 *et seq.*), the
commissioner of public lands entered into a contract with

[1]Reported in 150 Pac. 1149.

one Eugene Semple for the excavation of certain waterways and for the filling in and raising above high tide of certain tide lands belonging to the state, agreeing, also pursuant to the statute, to issue certificates as the work progressed, showing the actual cost of the work with fifteen per cent added, which certificates, when recorded, should be liens upon the lands so filled. Semple assigned his interest in the contract to the Seattle & Lake Washington Waterway Company, a corporation organized under the laws of the state of Washington and having its office and place of business at Seattle, who undertook the performance of the contract.

To float the certificates when earned and issued, the waterway company entered into a contract with the Spokane & Eastern Trust Company, a corporation organized as a banking and trust company under the laws of the state of Washington, having its banking house and place of business in the city of Spokane. The contract was in writing, and, after reciting that the waterway company had a contract with the state for the excavation of waterways and the filling in of certain tide lands, and would receive certificates for the cost of making such improvements, and that the trust company was desirous of underwriting and taking from the waterway company, upon certain enumerated conditions, such certificates, contained, among others, the following stipulations:

"Now Therefore, it is hereby understood and agreed by and between the parties hereto as follows:

"First: That said party of the first part [The Waterway Company] will proceed with all reasonable diligence and dispatch to fill and raise above high tide under its contract with the State of Washington, Blocks 395, 396 and 398, Seattle Tide Lands, King County, Washington, and will obtain from the Commissioner of Public Lands certificates thereon, in such order and of such denominations as may be found to be most desirable by said party of the first part, and upon receipt of such certificates duly executed, it will cause the same to be recorded in the manner provided by law, and as soon as such record is completed and such certificates

are returned to it, it will deliver the same, together with an assignment thereof in due and regular form, properly executed, to the said party of the second part [The Trust Company], or to such other party or parties as the second party may in writing direct. And the party of the second part agrees that upon receipt of such certificates and assignment, and each thereof, it will immediately pay to said party of the first part, or its order, for such certificates, at the rate of ninety-five cents on the dollar, par value thereof, together with accrued interest thereon from the date thereof until the date of the payment therefor.

"Fourth: It is hereby further understood and agreed that the said party of the first part shall, if so requested by second party, at its own cost and expense, procure the certificates hereinbefore referred to, and cause the same to be recorded and delivered as aforesaid, and keep a complete record thereof, and send out notices, make collections thereon and remit the proceeds thereof to the said party of the second part. And further, that should default occur in making payments when due upon said certificates, the party of the first part shall, upon written notice from the party of the second part, immediately proceed to collect the same by suit or otherwise, all at the cost and expense of the said party of the first part.

"Fifth: It is further understood and agreed that the said party of the first part shall be governed entirely by the written instructions of the said party of the second part in the matter of receiving and accepting payments in advance of maturity upon any of said certificates.

"Sixth: It is further understood and agreed that the said party of the first part shall and will, at its own cost and expense, do what ever is necessary or desirable for the protection of the liens of said certificates upon the lands for the improvement of which such certificates are issued."

Subsequent to the execution of the last named contract, the waterway company received from the state, for excavating waterways and filling tide lands, certificates of a value in excess of one million dollars, all of which were purchased by the trust company pursuant to the contract, and by the trust company floated among its clients desiring that form

of investment.  After the execution of the contract between the state and Semple, the tide lands affected thereby passed from the state into private ownership, and as the certificates matured were taken up for the larger part by the private owners.  Certain of these, however, were not redeemed, and were assigned in trust by the investors purchasing them from the trust company to J. P. M. Richards, the president of the trust company, who brought suit in the superior court of King county to foreclose the liens represented thereby.  Pending the foreclosure suit, certain of the certificates were redeemed by the owners of the property.  A decree of foreclosure was taken by Richards on the others, and the tide land lots sold thereunder.  At this sale, certain of the lots were purchased for cash, and the remainder by Richards, as trustee, in satisfaction of the decree.

On April 6, 1914, the waterway company began an action in the superior court of King county against the trust company and J. P. M. Richards, in his individual capacity and in his capacity as trustee, averring that it had interest in the money received from the foreclosure proceedings and in the tide land lots purchased by Richards thereunder by reason (as it is alleged),

".  .  .   that 'when the first installment of principal payable on said certificates and the first annual amount of interest accruing thereon fell due in the months of September and October, 1908, neither the owners of the tidelands covered by said certificates, nor any person interested with said owners paid the said sums then falling due or any part thereof.  Thereupon by mutual consent and agreement between the plaintiff and the defendants Richards and Spokane & Eastern Trust Company, the then owner of all said certificates, it was agreed that plaintiff should advance the several amounts then delinquent, on the understanding and agreement that the plaintiff should by making such payment acquire an interest in all of said certificates in such proportion as the amount paid by the plaintiff then bore to the full face value of the principal and interest of said certificates, and

that said Spokane & Eastern Trust Company should hold in trust for plaintiff the said proportionate interest in said certificates, and thereupon pursuant to said understanding and arrangement, and for the mutual benefit of both parties, the plaintiff on December 4, 1908, advanced to the defendant Spokane & Eastern Trust Company the amount then delinquent on said certificates, namely, one-tenth of the principal thereof and the first year's interest then delinquent, and delinquent interest, the whole amount so paid by the plaintiff to said Spokane & Eastern Trust Company being the sum of $22,562.81, and thereupon plaintiff became, ever since has been and now is equitably and beneficially a part owner in said certificates and any property and interests resulting therefrom in the proportion determined as aforesaid, to-wit, the equitable and beneficial owner of sixteen and 36-100 per cent. in each and every of said certificates, and all the money, property and other benefit resulting or to result therefrom.' "

The complaint also contained allegations to the effect that the trust company was the beneficial owner of the real property procured in the foreclosure proceedings, and that the money received in virtue of such proceedings had been turned over by Richards to the trust company. Service of summons in the action was made on J. P. M. Richards in King county; Richards being there served in his individual capacity and as trustee, and as president of the trust company. On April 22, 1914, the defendants moved for a change of venue to Spokane county. The motion was based on the grounds that the action had not been begun in the proper county, and that the convenience of witnesses would be forwarded by a change to Spokane county. The motion was supported by an affidavit, to which answering affidavits were filed, which in turn were followed by an affidavit in reply. At the hearing, the claim that the convenience of witnesses would be forwarded was not pressed, but the motion was granted on the ground that the action was not begun in the proper county. This proceeding was brought to review the order.

The trial court concluded from the record:

"(1)    That the defendants J. P. M. Richards and J. P. M. Richards, as trustee, reside and did reside at the time of the commencement of this action in the county of Spokane;

"(2)    That the defendant Spokane & Eastern Trust Company is not a necessary party to this action;

"(3)    That the defendant Spokane & Eastern Trust Company is not transacting business in King county, and was not transacting business in King county at the time of the commencement of this action or at the time the cause of action arose."

In so far as the second of the court's conclusions is concerned, we agree with the relator that it is not well founded. Since, however, the conclusion that the trust company is a necessary party to the action does not in itself require the reversal of the trial court's order, we shall not stop to state our reasons for the holding, but will pass to the controlling question.

The statutes of this state relating to the venue of actions against private corporations provides that,

"An action against a corporation may be brought in any county where the corporation transacts business or transacted business at the time the cause of action arose; or in any county where the corporation has an office for the transaction of business or any person resides upon whom process may be served against such corporation, unless otherwise provided in this code." Rem. & Bal. Code, § 206 (P. C. 81 § 107).

It is conceded in the record, or if not conceded is abundantly proven, that J. P. M. Richards was, at all times during the transactions before mentioned, a resident of the city of Spokane, in Spokane county, and that his presence in King county at the time he was served with summons in the present action was an accidental circumstance. It was abundantly proven, also, that the trust company had its banking house and its place of business in the city of Spokane, in Spokane county, and had no office for the transaction of business in

King county, the place of suit, nor did any one reside therein upon whom process could be served against it. If, therefore, it can be sued in King county against its will, it is because it was transacting business in that county at the time of the commencement of the action, or transacted business therein at the time the cause of action arose.

The record does not show, and it is not claimed, as we understand it, that the corporation transacted business in King county extrinsic of the matters connected with the purchase of these certificates; but the contention is that, because the written agreement entered into between the waterway company and the trust company required the waterway company to keep a complete record of the certificates issued, send out notices and make collections thereon and remit the proceeds to the trust company, and if default occurred in payments due upon such certificates to collect the same by suit or otherwise on the written notice of the trust company, the waterway company became the agent of the trust company, and that its acts taken in this behalf, together with the acts of the president, the vice president, the manager of the trust company, each of whom from time to time came to King county from Spokane county and consulted with the officers of the waterway company concerning the certificates, constituted a transaction of business within the county of King by the trust company, rendering it liable to be sued in that county by the waterway company.

But it is at once apparent that this is not a case where one company has employed another to transact for it a material part of the employer's business, but is a case where two independent companies, each in pursuit of its own business, have engaged to perform, for the mutual benefit of each, some specific duty with relation to a particular transaction. The waterway company desired to float these certificates. The trust company was in a position to float them, and was willing to do so on certain conditions. The waterway company accepted these conditions, a part of which

consisted in the performance on its part of certain specific duties. In the performance of these specific duties, the waterway company was not, in our opinion, as between the companies themselves, so far acting as the agent of the trust company as to make its acts the acts of the trust company. Undoubtedly, as between the trust company and some third person affected by the acts of the waterway company in its dealings with the certificates subsequent to their assignment to the trust company, the acts of the waterway company would be considered the acts of the trust company on the principle of agency; but clearly, as between the companies themselves, the contract is an independent contract, creating no relation of principal and agent. The waterway company cannot, therefore, claim that its acts thereunder are so far the acts of the trust company as to confer on it rights which it would not otherwise possess. In other words, since the waterway company was obligated under its contract with the trust company to send out notices with reference to the certificates, make collections thereon, and remit the proceeds thereof to the trust company, it cannot claim that its acts in that behalf were the acts of the trust company, for the purpose of conferring on itself the right to sue the trust company in a county other than in the county of its domicile.

Our conclusion is, therefore, that the trust company is not suable in King county against its will on the transaction set out in the complaint, and the order of the trial judge is affirmed.