11238

BASS v. AMERICAN PRODUCTS EXPORT & I. CORP.

(117 S. E., 594)

1. APPEAL AND ERROR—FINDINGS AS TO WHETHER PROCESS WAS SERVED ON AGENT OF DEFENDANT NOT REVIEWABLE, UNLESS MAINIFESTLY ERRONEOUS.—A finding in a law case, whether process has been legally served on defendant's agent, is not reviewable on appeal, unless wholly unsupported by evidence or manifestly influenced or controlled by error of law.

2. PRINCIPAL AND AGENT—AGENT'S DECLARATION MAY BE CONSIDERED IN DETERMINING EXISTENCE OF AGENCY.—Though an agency may not be established by the declarations and conduct of the alleged agent alone; such declarations and conduct may be admissible as circumstances tending to establish agency.

3. PRINCIPAL AND AGENT—EVIDENCE HELD SUFFICIENT TO ESTABLISH AGENCY BY ESTOPPEL.—Evidence as to the customary method of local cotton buyers to make their purchases as representatives of larger firms to whom they made daily shipments, and the fact that such a local buyer represented and held himself out to the public as the agent of a larger company, held sufficient to establish knowledge of the practice on the part of the company and make the local buyer an agent by estoppel.

4. PROCESS—SERVICE ON AGENT BY ESTOPPEL WITH POWER TO BIND PRINCIPAL IS VALID.—Service of process upon one who is agent of defendant by estoppel, and who has power to bind defendant, is sufficient and legal service.

5. PROCESS—SUFFICIENCY OF SERVICE OF PROCESS TO CONVEY NOTICE OF PROCEEDINGS NOT TEST OF LEGALITY OF SERVICE.—Though the sufficiency of service to convey notice of the proceeding is not decisive of its validity, it may be pertinent in determining the legality of service upon one whose representative character or agency is in question.

Before McIVER, J., Dillon, 1922.   Affirmed.

Action by T. J. Bass against American Products Export & Import Corporation.   From an order refusing to set aside the service of summons, defendant appeals.

*Messrs. Elliott* and *McLain,* for appellant, cite: *Cottingham was not agent of defendant within principle of* 61 S. C., 361. *Service on foreign corporation can be made on "any agent":* 73 S. C., 526; 93 S. C., 103. *No jurisdiction of domestic corporation unless it maintains an agent and transacts its corporate business:* 74 S. C., 69.

*Mr. N. B. Hargrove.* for respondent.   *Sufficient service on agent in county:* 73 S. C., 526; 76 S. C., 343; 86 S. C., 324; 86 S. C., 258; 74 S. C., 438; 78 S. C., 324; 65 S. C, 326; 112 S. C., 128; 74 S. C., 70.

May 22, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Appeal from an order of Hon. Edward McIver, Circuit Judge, refusing to set aside the service of the summons and complaint in an action for damages.   The plaintiff is a resident of Dillon County and the defendant a domestic corporation, with its principal place of business in Columbia.   Process was served on L. Cottingham in the town of Dillon, upon the theory that Cottingham was an agent of the defendant.   Defendant denies that Cottingham was its agent, and the validity of the service is challenged on that ground.

Upon the issue thus made and determined in the Circuit Court, this Court has no power in a law case to review the findings of the Circuit Judge, unless they were wholly unsupported by evidence or were manifestly influenced or controlled by error of law.   *Hester v. Rasin Fertilizer Co.*, 33 S. C., 609; 12 S. E., 563.   *McSwain v. Grain & Provision Co.*, 93 S. C., 103; 76 S. E., 117; Ann Cas., 1914D, 981.   *Lipe v. Carolina, Clinchfield & Ohio Ry. Co.* (S. C.), 116 S. E., 101, this term.   Appellant's contention here is, in substance, that the Circuit Judge's finding that Cottingham was an "agent" of the defendant is wholly unsupported by competent evidence.   The question raised by the appeal is not whether the defendant maintained an agent and conducted its corporate business in the County of Dillon, so as to constitute it a resident of Dillon and thus give the Court of Common Pleas for that County jurisdiction of the subject-matter of the action (Section 174, Code of Civ. Proc. 1912), but whether Cottingham was an agent within the meaning of Section 184, Code of Civ. Proc. 1912, upon whom service of process would suffice to give jurisdiction of the defendant's person.

The evidence, in the form of affidavits, submitted at the hearing, tended to establish that Cottingham was a cotton buyer at Dillon; that he had bought a considerable quantity of "cotton on a commission basis for" the defendant company; that the method of doing business was for Cotting-

ham to call the defendant's office in Columbia and get a "limit" for a particular day; that he would then buy on the Dillon market, ship the cotton to defendant and draw draft, which would include a fixed profit or commission per bale to him; that, if the cotton turned out to be "materially below grade or under weight," Cottingham would be "billed for the difference"; that defendant advanced no funds to Cottingham and was under no obligation to take all cotton bought by him and offered to defendant; that Cottingham claimed to represent the defendant in the buying and shipping of cotton; and that he held himself out and was recognized by the public as the defendant's "agent or representative" at Dillon.   Certain inferences which we think were competent for the Circuit Judge to deduce from the foregoing evidence were that the defendant corporation was engaged in the business of buying and selling cotton, and that the transactions between Cottingham and the defendant, carried on in the manner indicated, constituted a customary and established business practice or procedure which had extended over a considerable period of time.   The Circuit Judge was further entitled to consider the evidence and the inferences to which it was susceptible in the light of well-known conditions and customs that obtain in the marketing of the state's staple crop.   Owing to the fluctuations in the market price of cotton, and the amount of capital required to handle this commodity in any considerable quantity, the local cotton buyer rarely buys  for himself or in his own account, but almost universally operates by virture of a connection with some strong cotton-handling firm or corporation.   Such local buyer's prestige on the local market and even his ability to do business at all are largely dependent upon his being known as the "representative" of one of the large dealers—the larger and better known, the better for the buyer's chances of getting his share of the offerings on the local market.   Hence, from the evidence adduced, we think the further inference might properly have been

350   Bass *v.* American Prod. Exp. & Imp. Corp.

Opinion                                    [124 S. C.

drawn that the defendant was aware, or in the exercise of ordinary care should have been aware, of the fact that Cottingham claimed to be its representative in Dillon and so held himself out to the public.

While agency may not be established by the declarations and conduct of the alleged agent alone, such declarations and conduct may be admissible as circumstances in connection with other evidence tending to establish agency. *Watkins v. Railroad Co.,* 97 S. C., 150; 81 S. E., 426. Considered as a whole, we think the evidence was sufficient to support a legal conclusion that an implied agency or agency by estoppel (2 C. J., 461, § 70) might have arisen, which would have entailed liability on the part of the defendant for acts of Cottingham within the apparent scope of his authority, irrespective of whether there was an agency in fact.

If so, is service of process upon one whose ostensible relationship or connection with a corporation may be such as to bind the corporation as to third persons under the doctrine of agency by estoppel, a service upon an agent within the meaning of the Statute (Section 184, Code Civ. Proc. 1912)? The authority of any agent to bind the corporation by acceptance or receipt of legal process is seldom conferred by express authority of the principal; it is implied by law from the ostensible relationship between the parties. Thus a "timekeeper" may have no express authority to accept service, but his authority may be implied from a very limited actual authority to bind the corporation in respect of certain relations of his principal with others. *Jenkins v. Bridge Co.,* 73 S. C., 532; 53 S. E., 991. Very rarely perhaps, could service be made upon an "agent" if the service depended upon the express authority of the agent to act for the principal in that particular matter. If, therefore, the relationship between the person served and the corporation is such as would entail or support liability of the corporation as to third persons for acts of the osten-

Bass *v.* American Prod. Exp. & Imp. Corp.   351

346]                    October Term, 1922

sible agent within the apparent scope of his authority, we see no reason why such ostensible authority to bind the corporation should not be held to extend to and include the same implied authority to accept service or to act for the corporation in the receipt of legal process as an actual agent, without express authority, would have in like circumstances. Clearly, the term "agent" as used in a procedure Statute, enacted for the benefit of the general public, may not properly be given a more limited signification than it would have in adjudicating the rights of individuals arising out of a similar state of facts. In that view, there was some evidentiary basis for the Circuit Judge's conclusion that Cottingham was the defendant's agent.

That conclusion is reinforced in the case at bar by this practical consideration:

"The chief object of service of process is to give notice to the party served of the proceeding against him." *McSwain v. Grain & Provision Co.,* 93 S. C., 114; 76 S. E., 122; Ann. Cas. 1914D, 991.

Whether the actual relationship between Cottingham and the defendant was technically that of agency or not, the business connection was close. The defendant's corporate business in Dillon was admittedly transacted through Cottingham or by virtue of an established business connection with him. The relationship in fact was such that the Court might reasonably and fairly have inferred from all the circumstances that service upon Cottingham would result—as it did—in prompt notice to the defendant and adequate opportunity to defend. While the sufficiency of the service to convey notice or knowledge of the proceeding is, of course, by no means decisive of its validity, this consideration is pertinent in determining the legaltiy of the service of process upon one whose representative character or agency is brought in question. See *McSwain v. Grain & Provision Co., supra.*

The law commits the determination of the issue here made to the Circuit Judge, and, whther his conclusion was correct or not, we may not properly hold that his finding was wholly without evidence to support it.

The judgment of the Circuit Court is accordingly affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER *concur*.

MR. JUSTICE COTHRAN (dissenting) : I think it clearly appears from the record that the Court of Common Pleas for Dillon County was without jurisdiction of the action, and that it should have been so declared.

It is conceded that, the defendant is a domestic corporation, with its principal place of business, and actually doing business, in the city of Columbia, Richland County. Its domicile—its legal residence—is therefore in Richland County, and it is a matter not only of legal right but of the jurisdiction of the Court that it be sued in that county only, unless it should appear that the corporation is maintaining an agent and transacting its corporate business in some other county in the State. It has been sued in the County of Dillon, and, in order to sustain the jurisdiction of the Courts of that county, it is incumbent upon the plaintiff to establish the exception indicated.

I do not at all agree to the statement in the leading opinion :

"The question raised by the appeal is not whether the defendant maintained an agent and conducted its corporate business in the County of Dillon, so as to constitute it a resident of Dillon and thus give the Court of Common Pleas for that county jurisdiction of the subject matter of the action (Section 174, Code of Civil Proc. 1912), but whether Cottingham was an agent within the meaning of Section 184, Code of Civil Proc. 1912, upon whom service of process would suffice to give jurisdiction of the defendant's person."

On the contrary, the question stated, the existence of which is denied, as I understand it, is the crux of the appeal; the subsidiary question, whether or not Cottingham was an agent of the defendant, being determinative on the main question.

The notice of the motion to set aside the service of the summons contains the grounds of the motion: That the defendant "corporation is a resident of Richland County, S. C., has its principal and only place of business at Columbia, in that county, and has no office or agent in Dillon County, owns no rear estate or other property in Dillon County, and therefore not a resident of Dillon County, and has no agent there upon whom summons and complaint may be served, and that L. Cottingham is not an agent of said company"; matters going directly to the jurisdiction of the Court of Common Pleas for Dillon County, not simply of the person of the defendant but of the subject-matter of the controversy.

The affidavits submitted by the defendant are in support of the objection to the jurisdiction of the Court; the arguments of both appellant and respondent are full upon the question of jurisdiction; and, while the appellant's exception apparently raises the single issue of Cottingham's agency, that is a matter in support of their main contention; and if the appellant had not, by this exception, raised the question of jurisdiction, as had often been held, it may be raised for the first time in this Court and by the Court *sua sponte.*

Even if the question of jurisdiction be not at issue upon this appeal, as held in the leading opinion, the decision of the appeal would not conclude the defendant from raising it when the case comes to trial; and it seems to me that it is in the interest of the speedy administration of justice that it be determined now. It is well settled that the question raised goes to the jurisdiction of the subject-matter and not simply of the person.

A marked distinction between the law as to foreign corporations and that as to domestic corporations, in the matter

of jurisdiction, is that, in the case of a foreign corporation, the question is whether or not the Court had jurisdiction of the person of the defendant so that it could render a personal judgment against it. In the case of a domestic corporation, the question is whether or not the Court had jurisdiction of the subject-matter. In *McGrath v. Insurance Co.,* 74 S. C., 69; 54 S. E., 218, the Court said:

"Jurisdiction has two aspects, jurisdiction of the person and jurisdiction of the subject-matter. In so far as jurisdiction of the person is concerned, it is settled by numerous cases that a general appearance or answer to the merits is a waiver of such objection to jurisdiction. *Garrett v. Harring Co.,* 69 S. C., 278. When, however, jurisdiction of the subject-matter is concerned, it is not waived by appearance and answer but may be urged at any time. *Ware v. Henderson,* 25 S. C., 387. *Bell v. Fludd,* 28 S. C., 314; 5 S. E., 810. The last cited cases show that the present question relates to jurisdiction of the subject-matter, the power of the Court for Abbeville County to hear the cause, notwithstanding jurisdiction of the person was acquired by the service of process upon defendant's alleged agent in Abbeville County or by the answer to the merits."

"The result * * * is that a domestic corporation must be sued in the county of its legal residence and that the jurisdiction in such case relates to the subject-matter and not the person." *Hunter v. Alderman,* 79 S. C., 555; 61 S. E., 202.

Coming then, as I think we must, to a determination of the real issue in the case, the question of jurisdiction: In view of the many Statutes of other States regulating the place of trial of actions against domestic corporations, it is remarkable that this State has no specific legislation upon the subject; the matter is referable to an omnibus provision in Section 174 of the Code, applicable as well to individuals as to domestic corporations. After providing, in Section 173, for the trial of certain causes in the county in which

the cause or some part thereof arose, inapplicable to the present inquiry, it is provided, in Section 174:

"In all other cases the action shall be tried in the county in which the defendant resides at the time of the commencement of the action."

It has accordingly been left to judicial interpretation to declare where the residence of a domestic corporation may be said to be; and I think that the following principles have been thoroughly settled:

(1) A domestic corporation resides and may be sued in the county where its principal place of business is fixed by its charter; and this although its actual business may be carried on, and its officers reside, in some other county.

(2) A domestic corporation may be sued in any county where it has and maintains a place of business or servants, employees, or agents engaged in conducting and carrying on the business for which it exists; notwithstanding the fact that its principal place of business may be fixed by its charter in another county and it may be actually conducting its principal business in such county.

"The residence of the company, if a local residence can be affirmed of it, is more obviously where it is actually present in the operations of its enterprise." *Glaize v. R. Co.,* 1 Strob., 70.

"A railroad company, under the laws of this State, is, within the meaning of Sec. 146 [174] of Code, a resident of the county or counties in which its line * * * is located, and where it maintains a public office for the transaction of its business, and an agent upon whom process may be served." *Tobin v. R. Co.,* 47 S. C., 387; 25 S. E., 283; 58 Am. St. Rep., 890.

"Section 146 of our Code [now 174] provides that actions of this character, injury to personal property, shall be tried in the county in which the defendant resides. * * * We have no statute expressly providing for the place of trial of such actions against domestic corporations." *Tobin v. R.*

*Co.,* 47 S. C., 387; 25 S. E., 283; 58 Am. St. Rep., 890.

"In this state, whatever may be the rule elsewhere, a domestic corporation resides in any county where it maintains an agent and transacts its corporate business." *Mc-Grath v. Ins. Co.,* 74 S. C., 69; 54 S. E., 218.

"A domestic corporation is resident in any county in the State where it maintains an agent and conducts its coroorate business, and under section 146 [174] Code of Procedure, must be sued in the county where it resides." .*Elms v. Power Co.,* 78 S. C., 323; 58 S. E., 809.

"If a defendant is a domestic corporation, the suit may be brought in any county where it maintains an agent and transacts its corporate business." *Dennis v. R. Co.,* 86 S. C., 258; 68 S. E., 465.

"It is settled that a suit may be brought against a domestic-corporation in any county where it maintains an agent and conducts its corporate business." *Patterson v. Orangeburg Co.,* 120 S. C., 478; 113 S. E., 318.

"A corporation, like an individual, has the right and privilege secured to it by the laws of Texas to be used in the county of its domicile, unless it is alleged and proved by the plaintiff that it has an agency or representative in the county in which the suit was instituted, other than the place in which its domicile is situated. The right to sue in another than the county of domicile is for the benefit of the plaintiff, and he must present the facts necessary to show that his case comes within the countenance and support of the exceptions to the general rule that no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile." *Cannel Coal Co. v. Luna* (Tex. Civ. App.) 144 S. W., 721.

Inasmuch as the right of a corporation to be sued only in the county of its residence it derived from the same provision of the law as is that of an individual: "In all other cases the action shall be tried in the county in which the defendant resides," it would seem logically to follow

that conducting business through an agent in another county would no more constitute a new residence in the one case than in the other.   But, as repeated decisions have drawn such a distinction, the matter has passed beyond the expediency of criticism.   Attention is called to it merely as a warning against further straining of the law.

In passing upon the question of whether or not the defendant maintained an agent and transacted its corporate business in the County of Dillon, it is necessary to consider the relation which existed in a business way between defendant and one L. Cottingham, for it is upon that relation alone that the jurisdiction is claimed.   If Cottingham, upon the admitted facts, may be said to have been an agent of the defendant, residing and transacting the defendant's business in Dillon County, the jurisdiction is complete, otherwise not.

I do not think that there is a particle of evidence in the case that Cottingham was in any sense an agent of the defendant.   It matters little what Cottingham called himself, what others called him or thought he was, his relation to the defendant is clearly shown by the undisputed facts, and it is to them and not to the interpretations placed upon them by Cottingham or anyone else that we must look.

I think that it appears beyond controversy that Cottingham was an independent cotton buyer residing at Dillon and doing business there strictly upon his own account; he bought cotton on his own account, with his own money, expecting to sell it at an advanced price or for a stated commission to either the defendant or any other buyer.   The business arangement between him and the defendant, which also was engaged in buying cotton, was that each day Cottingham would call up the defendant by telephone, state what the market was at Dillon, and inquire what the defendant would give for cotton on that particular day.   If the defendant was in the market and was willing to give price at Dillon. it would so state to Cottingham, giving the

number of bales desired. Cottingham would then buy the cotton which the defendant indicated, paying for it out of his own money, ship it to the defendant, and draw upon defendant for the invoice, which would include a definite profit to him per bale. If this amounts to anything more than a business engagement between two parties, acting as independent traders, it is beyond my comprehension.

"But it is at once apparent that this is not a case where one company has employed another to transact for it a material part of the employer's business, but is a case where two independent companies, each in pursuit of its own business, has engaged to perform, for the material benefit of each, some specified duty with relation to a particular transaction." *State v. Superior Court*, 86 Wash., 657; 150 Pac., 1149.

Compare the facts in the case at bar with those in *Patterson v. Orangeburg Co.*, 120 S. C., 478; 113 S. E., 318, where the agency was established:

"There was evidence before the Circuit Judge tending to establish that Cave [the person upon whom process was served] had been the agent of the fertilizer company for about eight years, that he was paid a monthly salary, that his business was to sell fertilizer, that he solicited orders and sent them to the headquarters of the corporation at Orangeburg, that he represented the company in the adjustment of terms of contracts and in having notes for the purchase price of fertilizer signed and forwarded, etc.'

It also appeared that the agent in question had consummated the contract out of which the suit arose. There could have been no other conclusion from these facts than that Cave was the agent of the corporation and that it was "doing business" in the County where the suit originated, in marked contrast to the facts of the case at bar.

The relation of agency implies two elements, both of which are absent in the transaction in question: (1) The power on the part of the principal to direct the conduct of

the business.    (2) Liability of the principal for the acts of the agent within the scope of his authority.

It would have been impertinence on the part of the defendant to have directed Cottingham, who was selling to others as well as to defendant, how his private business should be conducted.    Clearly there would have been no liability upon the defendant for Cottingham's transactions in such business.    In fact, the interest which the defendant had in the cotton purchased by Cottingham was prospective merely, consummated by a trade between them to be afterwards entered into.

Test the existence of the relation of principal and agent by a hypothesis or two:  If Cottingham had agreed to buy a farmer's cotton at a certain price and had refused to carry out his contract, could the farmer have sued the defendant upon such breach of contract?  Surely, if Cottingham was the agent of the defendant.  If Cottingham had stolen the cotton which he agreed to sell to defendant, could the defendant be held for it?  If Cottingham, in trading for cotton, had willfully assaulted his seller, could the defendant be held for the assault?  Surely, if Cottingham was an agent and acting within the scope of his agency.

While conceding that "the sufficiency of the service to convey notice or knowledge of the proceeding is of course by no means decisive of the validity," it is suggested in the leading opinion that that consideration is pertinent in determing the legality of the service upon one whose agency is brought in question.  That may be true when the matter in question relates to jurisdiction of the person, but not of the subject-matter.

"The object of service of the summons is not only to give notice to the defendant of the pendency of a suit against him, but to bring him under the jurisdiction of the Court." *Jenkins v. Bridge Co.,* 73 S. C., 526; 53 S. E., 991.

"The Circuit Judge was in error in the view which he seems to have taken that the object of the service had been

360  Bass *v.* American Prod. Exp. & Imp. Corp.

Dissenting  Opinion       [124 S. C.—346]

accomplished when the defendant received, through the service, notice of the suit, and by special appearance moved to set it aside. *Hester v. Rasin Co.,* 33 S. C., 609; 12 S. E., 563. *Wren v. Johnson,* 62 S. C., 533; 40 S. E., 937." Idem.

The same objection is applicable to the suggestion that the defendant may be estopped from denying the agency of Cottingham. This might be true if Cottingham had been a resident of Richland County and the matter in question was the jurisdiction of the person of the defendant, the Court admittedly having jurisdiction of the subject-matter. But it is inconceivable that the defendant may be estopped from denying the jurisdiction of the Court of the subject-matter. It is axiomatic that consent will never confer jurisdiction in such a case; and surely estoppel, which is in the nature of implied consent, has no greater force than expressed consent. Even answering on the merits does not waive the objection. *Nixon v. Ins. Co.,* 74 S. C., 438; 54 S. E., 657.

I do not suppose that there is a cotton mill in the State which has not a business arrangement such as the defendant had with Cottingham. To hold that every such cotton buyer, acting independently and under no contract whatsoever with the mill, is its agent, transacting not his business but the mill's business in another county, would render the mill amenable to suit in any one of perhaps forty Counties in the State; a position destructive of the right accorded by Statute to individuals as well as corporations to be sued only in the county of their residence.

I suggest with deference that the jurisdiction of the subject-matter, in an action against a domestic corporation, has been confused with the jurisdiction of the person in an action against a foreign corporation. In the latter the jurisdiction is obtained by service upon any agent in any county; in the former the jurisdiction is obtained only by service

upon an agent transacting the business of the corporation in a particular county.