18304

Amal F. DOW, Respondent, v. John Taylor BOLDEN, Appellant. G. Allen BLACK, Guardian Ad Litem for Larry Black, a Minor over the age of fourteen (14) years, Respondent, v. John Taylor BOLDEN, Appellant.

(140 S. E. (2d) 473)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Richard J. Foster, Esq.,* of Greenville, *for Respondents.*

February 11, 1965.

BUSSEY, Justice.

The two cases here involved arise out of an accident which occurred in Greenville on November 3, 1962, at which time the plaintiff Dow was operating an automobile, occupied by the minor plaintiff Black, which was allegedly in a collision with an automobile owned and operated by the defendant Bolden. The complaints in each action allege Bolden to be a resident of the County of Greenville.

The defendant, for several years prior to the time of the accident, was engaged as a construction worker and in and out of Greenville in connection with different construction jobs, but there is nothing in the record to show that prior to the accident he had been away from Greenville or out of the state for any appreciable length of

time. He was married, with one child, and his wife resided near "the Ware place", her address being Route 3, Belton, South Carolina (the record does not disclose whether such is in Anderson County or Greenville County, it being inferential that she resided near the county line). His mother resided at 98 Gibbes Street, in the City of Greenville, and a woman by the name of Mattie Stevenson, with whom the defendant apparently had at least some connection, resided at 7 Mansell Street, in the City of Greenville. The evidence is in some conflict as to which of these three addresses was the residence of the defendant on or about November 3, 1962. However, it is clear that he was a resident of South Carolina.

At some time after November 3rd, the date of the collision, and not later than December 20, 1962, the defendant left the State of South Carolina, his avowed destination being either Decatur or Birmingham, Alabama, the exact date of his departure not being established, and since that time he apparently has not been heard of or from in the State of South Carolina, except for one letter written to Stevenson shortly after his departure. Efforts to locate and contact the defendant since have been unsuccessful, his whereabouts being unknown to any interested person in this state so far as the record reflects.

At some time during the year 1963, the exact date not appearing, the plaintiffs sought to effect service upon the defendant under Code Sections 10-431 and 10-431.1, by forwarding process to the Chief Highway Commissioner, and letters addressed by certified mail to Bolden at both Birmingham and Decatur, Alabama, said letters being returned for insufficient address. On January 24, 1964, an order of the court was entered holding invalid and ineffective such attemped service upon the defendant.

Thereafter, on April 20, 1964, the judge of the Greenville County Court directed that the defendant Bolden be served by publication, such order being apparently predi-

cated upon Section 10-451 (2) of the Code which provides for such service, other prerequisites being present, "When the defendant, being a resident of this State, has departed therefrom, with intent to defraud his creditors or to avoid the service of a summons or keeps himself concealed therein with like intent."

Such order was issued upon affidavits of plaintiff's attorney and deputy sheriffs of Anderson and Greenville Counties to the effect that the defendant could not be found in either of said counties, and upon affidavits of the mother and wife of the defendant as to the circumstances attendant upon his departure from the State of South Carolina.

After publication of the summons, attorneys representing the defendant Bolden's liability insurance carrier, which had filed a policy covering the defendant with the Safety Responsibility Section of the South Carolina Highway Department on an SR-22 filing, appeared solely for the purpose of questioning the jurisdiction of the court and the service of process upon the defendant, and, within due time, served in each case a notice of motion to quash and set aside the "purported and attempted service." Attorneys for both plaintiffs and defendant submitted affidavits in support of their respective contentions, and following a hearing, the judge of the County Court issued a single order holding that the evidence clearly established that the defendant departed from the State of South Carolina following the accident with the intent to avoid the service of a summons, and subsequently kept himself concealed in another state with like intent, and that said defendant was properly served by publication in accordance with Section 10-451 (2) of the 1962 Code of Laws. From this order the defendant appeals.

His exceptions challenge the conclusion of the trial judge that the defendant departed the state following the accident with the intent to avoid the service of a summons in connection therewith. He relies strongly on the case of *King v. Moore,* 224 S. C. 400, 79 S. E. (2d) 460, a case involving

the application of Section 10-451(2) of the Code of Laws, but a case in which the facts are not at all apposite with the case at bar. There it was held that the burden was upon the plaintiff to establish that the defendant had departed from the state for the purpose of avoiding the service of a summons. We agree with this proposition of law, but additional principles of law which govern this appeal were aptly stated in the fairly recent case of *Lawson v. Jeter,* 243 S. C. 103, 132 S. E. (2d) 276, in the following language:

"It is well settled that questions of fact arising on a motion to quash service of process for lack of jurisdiction of the person of the defendant are to be determined by the court. *Bargesser v. Coleman Company,* 230 S. C. 562, 96 S. E. (2d) 825. The findings of the circuit court on such issues are binding on this court unless wholly unsupported by the evidence or manifestly influenced or controlled by error of law. *Bass v. American Products Export & Import Corporation,* 124 S. C. 346, 117 S. E. 594, 30 A. L. R. 168; West's South Carolina Digest, Appeal and Error, 1024(3)."

No exception expressly contends that the judge's findings of fact were manifestly influenced or controlled by error of law, but the brief does argue that his Honor was so influenced in one respect, which we will hereinafter discuss. We will first revert to the principal question of whether the findings of fact by the lower court are wholly unsupported by the evidence, which, of course, necessitates a review of the same.

On April 16, 1964, Tecora Bolden, a resident of the City of Greenville, and mother of the defendant Bolden, signed an affidavit to the effect that her son, shortly after the November wreck, "believing he would get into further trouble because of such wreck left the home"; that she had heard nothing from him since that time; that when he left the state he was going to Birmingham, Alabama, and did not leave any particular address. On April 18, 1964, Pauline Bolden, wife of the defendant, signed an affidavit to the

same purport and effect as that of Tecora Bolden, except that each of affiants said that the defendant was residing at their respective addresses prior to departure. Both of these affidavits were before the court when service by publication was ordered.

In support of the motion to quash, attorneys for the defendant relied upon an affidavit of Tecora Bolden, dated June 19, 1964, in which she largely repudiated her affidavit of April 16th; an affidavit from Ernest W. Bolden, brother of the defendant; affidavit of Rosazella Gaines, a sister of the defendant; and an affidavit of Mattie Stevenson.

These four affidavits state, in effect, that the defendant did not leave Greenville under any apprehension of further trouble as a result of the accident; that he made no statement indicating that he was under any apprehension thereabout; that he had paid a fine on some traffic charge arising out of the accident; and that he left Greenville for Decatur, Alabama, to take a job and had no other reason for leaving.

None of these affiants set forth the exact date of defendant's departure, but Ernest W. Bolden and Rosazella Gaines fix the time of his departure as shortly before Christmas 1962 and Mattie Stevenson fixes the last time she saw the defendant as being on or about December 20, 1962.

It appears that the father of the defendant died at some undisclosed time between the date of the accident and the date of the hearing below, and that the family was not able to contact him to inform him thereabout.

Approximately eighteen months elapsed between the time of the accident and the date when the affidavits on behalf of the defendant were executed. While it is brought out that the defendant followed construction work and went from job to job, there is no suggestion in any of these affidavits that defendant had ever been away from home, unheard of, for nearly so long a period of time, either within or without the State of South Carolina, and none of the affiants even attempt to explain why defendant remained

out of contact with his family for so long a period of time if, in point of fact, he had left the state for the sole purpose of taking a construction job in Decatur, Alabama.

The plaintiffs, in reply to the second or repudiating affidavit of Tecora Bolden, filed affidavits by one John Hammett, a licensed adjuster employed by plaintiffs' counsel, and John Bolt Culbertson, a member of the Greenville Bar. Hammett stated that he had made several attempts to learn the address and whereabouts of the defendant from his mother, Tecora Bolden, and had also interviewed Ernest Bolden from whom he learned that Tecora had contacted Mr. Culbertson who had allegedly advised his mother not to sign any papers. Thereupon Hammett contacted Mr. Culbertson, who agreed to accompany him to the home of Tecora.

Both Hammett and Culbertson set forth in some detail just what Tecora told them on that occasion with respect to the departure of her son and his reasons for leaving. They both confirmed that the contents of Tecora's first affidavit, which she now attempts to repudiate, are in accord with what she told them on that occasion, and that the same was read and explained to her. The affidavit, however, was not signed until a later date, and was left at the home of Tecora so that Ernest Bolden could read it before his mother signed the same. Hammett further stated that on a subsequent occasion Ernest Bolden had told him that he had read the affidavit and had advised his mother that it was all right for her to sign it.

The foregoing is, we think, a sufficient summary of the affidavits, pro and con, to show the conflict in the evidence before the judge. We have not attempted to set them forth in full, they being somewhat lengthy, but have endeavored not to leave out anything of material significance in our summarization.

On this evidence the judge factually found that the defendant had departed the state for Alabama no later than

December 20, 1962, and that the defendant had not since communicated with his family; that diligent efforts had been made by counsel for plaintiffs and defendant and that neither had been able to ascertain the address of the defendant for a year and a half; and that while defendant frequently moved to locations of jobs on which he was employed, the inference was clear that defendant had not previously remained away from Greenville for any period of time approaching one and a half years. He then arrived at the ultimate finding of fact that the defendant had departed the state with the intent to avoid the service of a summons and that he had subsequently kept himself concealed in another state with like intent.

In argument, defendant lays stress upon the conflict in the original affidavit of Tecora Bolden and the affidavit of Pauline Bolden with respect to where the defendant lived for several months immediately prior to his departure from the state; it being argued, in effect, that in view of this conflict, the judge should have seriously questioned the accuracy of both affidavits.

In her repudiating affidavit, the mother says that the son did not live with her or his wife, but lived with Mattie Stevenson. The unrepudiated affidavit of the wife is to the effect that the defendant resided with her. Ernest Bolden and Rosazella Gaines say that he lived with Stevenson, and Stevenson admits that he stayed there occasionally and received mail at her address. We think the most that can be said with respect to this conflict of evidence is that it clearly gives rise to the inference that the defendant hung his hat at either his wife's, his mother's, or Stevenson's as the notion suited him. In any event, he was a resident of South Carolina at the time and there is no contention that he did not have opportunity to see both his wife and his mother and discuss with them his reasons for departing the state. Under these circumstances, his exact address was immaterial.

Defendant also argues that the affidavits of Tecora ■ Bolden and Pauline Bolden were insufficient to support his Honor's finding of fact with respect to the intent of defendant in departing from the state in that such did not specifically refer to "avoiding the service of a summons", and contained only the conclusions of the affiants as to defendant's reasons for leaving, rather than direct quotations of precisely what he said. Without going into detail, we think the record contains a number of circumstances from which the judge could have reasonably and correctly inferred that the background and educational status of the affiants, as well as the defendant, were such that neither of them would have known the difference between a summons and any other process, either civil or criminal, which might be issued as a result of the accident, and would not know of any other way to describe the frame of mind of the defendant, prior to departure, than to say he believed he would get into further trouble as a result of the accident. If his intent were to avoid the service of all further process, of course a summons was included within such intent.

With respect to the contention that said affidavits ■ contained only the ultimate conclusions of the affiants and no direct quotations or statements attributed to the defendant, we call attention to the case of *Yates v. Gridley,* 16 S. C. 496. There publication was ordered on the basis of a single affidavit, and service pursuant to said order was upheld against attack, it being contended that the affidavit did not sufficiently set forth details upon which the ultimate facts alleged in the affidavit were based. This court said, with respect to what is now Section 10-451 of the Code,

"The act does not specify the character of the facts and circumstances which must be stated in the affidavit, or the quantity of the evidence necessary to satisfy the officer, before ordering publication. It simply requires that it must appear by affidavit to his satisfaction."

While not raised by any specific exception, the defendant argues that his Honor misconstrued and misinterpreted the provision of Code Section 10-451(2), in that the order upholding the service indicates that it is based, at least in part, on his Honor's finding as a matter of fact that the defendant concealed himself in another state to avoid the service of a summons. It is urged that the Code provision as to concealment refers only to a concealment within the State of South Carolina, with which contention we are inclined to agree. His Honor's finding of facts as to concealment beyond the state, however, does not indicate that his Honor was manifestly influenced or controlled by any error of law. Once his Honor found as a fact that the defendant had departed with the intent to avoid the service of a summons, it was unnecessary for him to make additional finding of fact with respect to concealment. Such additional finding of fact of subsequent concealment in another state was, we think, clearly inferable from the evidence before him and was merely corroborative of the intent with which his Honor found the defendant had departed from the state.

While we can see where a trier of fact may have arrived at a different conclusion from the conflicting evidence in this case, we cannot say that the findings of fact by the lower court are here wholly unsupported by the evidence or that such were "manifestly influenced or controlled by error of law." The judgment of the lower court is, accordingly,

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.