AMERICAN STEAM LAUNDRY COMPANY *v.* HAMBURG
BREMEN FIRE INSURANCE COMPANY.

(*Knoxville.*  September Term, 1908.)

1. **FIRE INSURANCE.** Forfeiture of policy by change of
   interest, though business is continued under same trade name.
   Where the owner of a laundry business, conducted under the
   name of a company as a trade name, insured, under such trade
   name, the laundry property against fire under a policy pro-
   viding that it shall be void, if any change should take place
   in the interest, title, or possession of the property insured, and
   thereafter sold the business to others, without any transfer of
   the policy, and without any notice of the sale to the insurer,
   the sale forfeited the policy, and such purchasers could not
   recover upon the same for a loss by fire, although they continued
   the business under the same trade name used by their ven-
   dor.

2. **SAME.** Policy is a personal contract for indemnity of insured
   and does not go with property on its sale, when.
   A fire insurance policy is a personal contract for the indemnity
   of the insured, and does not go with the property on its sale
   as an incident thereto, in the absence of an agreement for the
   transfer of the policy.  (*Post, pp.* 17-20.)

   Cases cited and approved:  Quarles v. Clayton, 87 Tenn., 308, 314;
   Bennett v. Featherstone, 110 Tenn., 27; Insurance Co. v. Man-
   ning (C. C. A.), 160 Fed. 385.

3. **SAME.** No assent to change in ownership, where agent trying
   to cancel policy is informed of some change in property, when.
   Where the agent of the insurer was informed that some changes
   had been made in the insured property, but was not informed
   as to whether there was a change in the title or ownership,
   or whether the changes were physical changes in the property,

he certainly did not assent to the changes whatever they were, for the reason that he was endeavoring at the time to take up and to cancel the policy. (*Post, p.* 21.)

**4. SAME. Broker effecting insurance is not the agent of the insurer so as to affect the insurer by notice to such broker.**

A broker who effects insurance, under no employment by the insurer, but for a commission upon the premium received for such risks as he procures to be offered and the insurer chooses to accept, is not the agent of the insurer in such sense that notice to him would bind the insurer; and hence notice of the sale and transfer of the insured property to brokers who effected the insurance and divided the commissions with the agent of the insurer would not bind the insurer. (*Post, pp.* 20-24.)

Cases cited and approved: Royal Insurance Co. v. McCrea, 8 Lea, 531, 532; Equitable Insurance Co. v. McCrea, 8 Lea, 541; Martin v. Insurance Co., 106 Tenn., 523, 528; Grace v. Insurance Co., 109 U. S., 278; Adams v. Insurance Co. (C. C.), 17 Fed., 630; Kehler v. Insurance Co. (C. C.), 23 Fed., 340; White v. Insurance Co., 120 Mass., 330; Devens v. Mechanics & Trust Co., 83 N. Y., 168; Hermann v. Insurance Co., 100 N. Y., 411.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

W. S. ROBERTS and GEO. W. FOX, for complainant.

CORNICK, WRIGHT & FRANTZ, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

On the 24th of August, 1906, the defendant insurance company issued a policy of $1,200 for one year, payable to the "American Steam Laundry Company," insuring certain laundry machines and other machines contained in a building described in the policy. The American Steam Laundry Company was not a corporation, but the term designated a laundry business carried on by one Coram Acuff; the name being used by him simply as a trade name. Subsequently he sold a half interest to one Wiley, and the latter sold his interest to S. P. Armstrong. After this Coram Acuff sold his remaining interest to C. E. Fox, and these two formed a new copartnership, but still used the name the "American Steam Laundry Company." The policy was not transferred, nor was the consent of the insurance company obtained. The property was simply transferred. However, when the transfer of the latter was made, it was mentioned that the property was under insurance, and the purchasers say they regarded this insurance as an asset of the firm.

The policy contained this provision upon the subject of transfer of interest:

"This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void if . . . any change other than by the death of the insurer take place in the interest, title or possession of the subject of insurance," etc.

The insurance was effected through one Toms, who

was an employee of Doll, Mynderse & Brownlee.    These
latter were not the agents of the insurance company that
effected the insurance, but were agents of other com-
panies.    The risk was tendered to them, but they did not
have any company that was willing to take laundry prop-
erty, so it was carried to J. E. Lutz & Co., who were
agents for the defendant insurance company, and that
company took the risk; Doll, Mynderse & Brownlee act-
ing only as brokers in the transaction, and J. E. Lutz &
Co. dividing the commission with them.

The negotiation of this insurance took place between
Mr. Toms, the employee of Doll, Mynderse & Brownlee,
on the one hand, and Coram Acuff on the other.    J. E.
Lutz & Co. did not at any time know that Acuff had sold
his interest in the property, or that Fox and Armstrong
had acquired his interest.    It is true that a few days be-
fore the fire Mr. Toms applied to J. E. Lutz & Co. for a
renewal of the policy; the policy which is in suit in the
present case having nearly reached its expiration.    Lutz
& Co. issued the renewal policy, but some days thereafter
recalled it.    They did not at that time know that Arm-
strong & Fox had any interest in the property.    They
were informed that there had been some changes, so they
say, but they did not know what changes they were,
whether physical changes merely or some other kind.
The renewal policy is not in question here.    It was taken
up.    It appears that Lutz & Co. understood themselves
as directing Mr. Toms to take up the whole insurance,
but he did not so understand them, and only took up the
renewal policy.

The question arises only on the original policy and is this: Are Fox & Armstrong entitled to recover under the facts stated?

They insist that they are entitled to recover because not only was the insurance issued in the name of the "American Steam Laundry Company," but the new firm continued to operate the business under the same name. Moreover, it is insisted that the insurance company paid no attention to the personnel of the man or men running the business, but simply insured under the trade name, and therefore no real change of risk resulted by the change of the personnel of the men operating under the name.

We think this is a mistaken view. The original transaction was with Coram Acuff, and must be treated as a transaction with him, although he used merely a trade-name instead of his own name. The property having passed to other persons without obtaining the consent of the insurance company, and the transfer of the policy, the property was no longer protected. A fire insurance policy is a contract of personal indemnity made with the individual protected, and does not go with the property as an incident thereto to any person who may buy that property. If it goes at all, it goes as a matter of contract for the transfer of the policy. *Quarles* v. *Clayton*, 87 Tenn., 308, 10 S. W., 505, 3 L. R. A., 170; *Bennett* v. *Featherstone*, 110 Tenn., 27, 71 S. W., 589.

In the first of these cases the court said:

"By all the authorities a contract of fire insurance is

a personal contract, and assures the interest alone of the assured in the property in the absence of some agreement or trust to the contrary; these provisions having been upheld by the courts as reasonable conditions limiting and restricting the liability of the insurer. That they are reasonable is obvious when we consider that the contract is one for the personal indemnity of the assured against a loss affecting the interest in the property covered by the policy. The insurer contracts with reference to the character of the assured for integrity and prudence. He might be very willing to agree to make good the loss of one for the destruction of property owned by him, while he would be unwilling to insure the same property if owned by another.

"Again the contract undertakes to make good any loss which that assured may sustain, and from this it follows that, if the assured has parted with his interest before the loss, he cannot ask to be indemnified because he has sustained no loss."

The opinion continues on page 314 of 87 Tenn., page 507 of 10 S. W. (3 L. R. A., 170):

"The contract is not therefore one which attaches to or follows the property, being one for the personal indemnity of the assured, and, when the insurer does not assent to the assignment of the policy to the grantee of the property, neither the assured nor his assignees of the property can recover upon the policy."

To the same effect, see *Insurance Co.* v. *Manning* (*C. C. A.*), 160 Fed., 385; also the following text-book authorities:

1 Cooley's Briefs on the Law of Insurance, p. 211 *et seq.*:

"In view of the principle heretofore discussed that the insured must have an insurable interest at the time the loss occurs, it may readily be inferred that the termination of the insurable interest of the person insured in the subject of the insurance terminates the policy. This is true irrespective of any provision of the policy providing for forfeiture in case of alienation or other change of interest"—citing cases from the federal courts and the courts of Iowa, Maine, Maryland, Massachusetts, Missouri, New York, Ohio, Pennsylvania and Louisiana. It is further said upon page 203 of the same volume: "An absolute transfer of the title of the insured in the subject of the insurance divests him of his entire insurable interest and terminates the policy"—citing cases from the federal courts and the courts of Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, New York, Ohio, and Pennsylvania. In volume 2, of the same author, at page 1732, it is said that a sale of a part interest in property by an insured to a third person will not terminate a contract of insurance in the absence of a condition against alienation. But, continuing on page 1733, the author says: "On the other hand, a condition against any sale, transfer, or change in title or interest is violated by a transfer of a part interest in the insured premises"—citing cases from Michigan and Texas. See, also, to the same effect, 1 May on Insurance, p. 542; 1 Samson's Digest of Laws of Insurance, p. 95; 3 Joyce on

Insurance, sections 3289, 3290. In Clement on Insurance, p. 517, it is said: "The contract of fire insurance is one of indemnity to the person to be insured, and does not extend to another person or interest without language in or on the policy consenting to same, or covering or including in the description the insured, or the property"—citing numerous cases from various jurisdictions in support of the text.

We do not think it material that the trade name continued the same. The individuals owning the business were different; just as different as if a different name had been used. The principle above referred to therefore has full operation, regardless of the persistence of the same trade name.

It is claimed that the company had notice of the change of ownership through the brokers who wrote the insurance. Upon the question of notice: J. E. Lutz & Co. were the agents who wrote the insurance. They were the only agents of the insurance company in the Knoxville territory, and the complainant had notice of this agency, by reason of the fact that they signed the policy as agents of the company. Messrs. Doll, Mynderse & Brownlee were in the general insurance and real estate business. As already stated, the application for insurance having been made to them, and they having no companies who would take the risk, they procured the policy to be issued by J. E. Lutz & Co. The only thing in the record tending to show any notice to them appears in the following excerpt taken from J. E. Lutz' deposition:

"Q.  Did you, or your firm, or your company, so far as you know, ever have any notice of any change of ownership in the property of complainants after the policy was written, and before the fire, and, if so state fully what notice you had?  A.  The only intimation we had was when I went to Doll, Mynderse & Brownlee and asked them for the return of the policy, as we wanted to cancel it.  He merely said he would have the policy taken up, and, while I did not state to him my reason for asking him for the return of the policy, he said there had been some changes, but I did not inquire whether physical or otherwise."  This was within two weeks of the fire.

It will thus be seen that, so far as the agent of the company is concerned, the only notice he had was some months after the change of ownership, and within two weeks of the fire.  He undertook to take up and cancel the policy, and was told at the time that there had been some changes, but was not informed as to whether there was a change in the title or ownership, or whether the changes were physical changes in the property.  Certainly he did not assent to the changes whatever they were, since he was endeavoring at that time to cancel the policy now in suit.

There is some question as to whether the brokers had notice, but we think that it is perfectly clear from the evidence that Mr. Toms, who was the employee of Doll, Mynderse & Brownlee, did have a general knowledge of the fact that Fox and Armstrong were the owners of the property, and that this knowledge came to him shortly

after they purchased. However, this would not affect the insurance company, since Doll, Mynderse & Brownlee were merely brokers. A case in point and conclusive of the question, when taken in connection with the case immediately following in the same volume, is that of *Royal Insurance Co.* v. *McCrea, Maury & Co.,* 8 Lea, 531, 41 Am. Rep., 656. The holding of the court in the case last referred to is set out in the syllabus, as follows: "If the general agent of a foreign insurance company who delivers and countersigns a policy, and whose duty it is to endorse on the policy existing or subsequent insurance, has knowledge of such insurance, and is ready to make the endorsement, but postpones doing so to suit his own convenience, when the assured offers to produce the policies for the purpose, and in the meantime the property is destroyed by fire, a condition of the policy requiring such insurance to be endorsed on the policy will be considered as waived, notwithstanding another condition contained in it that the use of general terms. or anything less than a distinct specific agreement, clearly expressed and endorsed on the policy, shall not be construed as a waiver of any printed or written condition or restriction therein." In the next case, referring to the former, the court said: "The principal defense, both in this court and the court below, was that of over insurance upon substantially the same proof as in the foregoing case, of the policies issued, their dates, and amounts, and proceedings had thereon. The reply to this defense was not the same as in the previous case, for, al-

though the policy was obtained by the assured through Peck & Cahill, these persons were not the agents of the Royal Insurance Company, and only acted as insurance brokers.  A broker who effects insurance under no employment by the insurer, but for a commission upon the premium received for such risks as he procures to be offered and the insurer chooses to accept, is not the agent of the insurer in such sense as to bind the insurer by notice to the agent.  *Devens* v. *Mechanics & Tr. Co.,* 83 N. Y., 168."  *Royal Insurance Co.* v. *McCrea, Maury & Co.,* 8 Lea, 531, 532, 41 Am. Rep., 656.

Again, this court adverted to the subject in *Martin* v. *Insurance Co.,* 106 Tenn., 523, 528, 61 S. W., 1024, 1025, and quoted with approval the following from *Hermann* v. *Insurance Co.,* 100 N. Y., 411, 3 N. E., 341, 53 Am. Rep., 197, viz. :  "But the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance on his principal's property, terminates with the procurement of the policy.  It cannot in reason be held to continue after the insurance has been procured and the policy had been delivered to the principal.  An agent to procure a contract has no power to discharge it implied from the original authority merely.  If he possesses that power, it arises from some actual or apparent authority superadded to the mere power to enter into the contract."  *Grace* v. *Am. Central Insurance Co.,* 109 U. S., 278, 3 Sup. Ct., 207, 27 L. Ed., 932 ; *Adams* v. *Fire Insurance Co.* (C. C.), 17 Fed., 630 ; *Kehler* v. *Fire Insurance*

*Co.* (C. C.), 23 Fed., 709; *Wight* v. *Royal Insurance Co.* (C. C.), 53 Fed. 340; Ostrander, Fire Insurance Cos., section 16; 1 Joyce on Insurance, sections 636, 637; 2 Joyce on Insurance, sections 1655-1666; *White* v. *Insurance Co.,* 120 Mass., 330; Mechem on Agency, section 931.

We are of opinion therefore that the plaintiff is not entitled to recover. The chancellor held otherwise, and his decree is therefore reversed, and the bill dismissed, with costs.