GERMAN ALLIANCE INS. CO. v. FORT
WORTH GRAIN & ELEVATOR CO.*
(No. 2808.)

(Court of Civil Appeals of Texas. Texarkana.
Nov. 30, 1923. Rehearing Denied
Dec. 20, 1923.)

1. Insurance ⊚⇒328(9)—Transfer by one part-
ner of his interest to copartners not a
"change of interest.".

The transfer by one copartner of his in-
terest in a partnership property to his copart-
ners, or to one who holds title as trustee for
them, is not a change of interest, within the
meaning of a stipulation in a policy of insur-
ance, that it should be void, if any change took
place in the ownership of "the subject of in-
surance."

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Change.]

2. Insurance ⊚⇒328(9)—Conveyance held to
violate · provision in policy against "change
in subject of the insurance."

Where the interest of a copartner in a
partnership was conveyed, but the purchase
price was never paid, and it was understood
that grantee was not to participate in the man-
agement of the partnership, nor share in the
profits and loss until he disposed of other busi-
ness interests, such conveyance was a violation
of a provision in an insurance policy, against
any change in the subject of the insurance.

3. Insurance ⊚⇒396(1)—Forfeiture of policy
held waived by conduct of insurer.

Where, after a loss by insured, insurer with
knowledge of conditions entitling it to forfeit
the policy, told the insured that the loss would
be paid and asked further data as to the loss,
which insured furnished, incurring expense and
devoting several days time to the work under
belief that the loss would be paid, forfeiture
of the policy held waived, though a nonwaiver
agreement had been signed.

Appeal from District Court, Tarrant Coun-
ty; Ben M. Terrell, Judge.

Action by the Fort Worth Grain & Eleva-
tor Company against the German Alliance In-
surance Company. Judgment for plaintiff,
and defendant appeals. Affirmed.

April 5, 1914, one M. M. Egan and appel-
lees J. R. Stitt and Mrs. E. E. Payne (or her
husband, appellee F. W. Payne, in her name),
as partners under the name "Fort Worth
Grain & Elevator Company," were in the
wholesale grain and feed business in Fort
Worth. On that day appellant issued to the
parties, in their firm name, a policy whereby
it insured their stock of grain and feed stuff
in the sum of $1,100 and their fixed and mov-
able machinery in the sum of $1,400 against
loss by fire before noon of April 5, 1915. The
property so insured was totally destroyed by
fire October 27, 1914. Appellant having re-
fused to pay the loss, this suit to enforce
payment thereof was commenced by said ap-

pellees Stitt, Mrs. E. E. Payne, and F. W.
Payne by a petition filed February 15, 1915.
The appeal is from a judgment in appellee's
favor for the $2,500, and interest thereon,
sued for.

Locke & Locke, of Dallas, for appellant.

Capps, Canty, Hanger & Short and J. W.
Stitt, all of Fort Worth, for appellee.

' WILLSON, C. J. (after stating the facts
as above). [1-2] The policy contained a stipu-
lation that it should be void if any change
should take place (without appellant's con-
sent) in the ownership of "the subject of in-
surance." Appellant insists it appeared that
such a change took place before the fire oc-
curred, and therefore that the judgment
against it is wrong. The insistence is based
on testimony showing that appellees J. R.
Stitt and F. W. Payne, or his wife E. E.
Payne, or both of them, and one M. M. Egan,
as partners, owned the property insured at
the time the policy was issued, to wit, April
5, 1914; that on June 14, 1914, Egan sold and
conveyed his interest therein to one D. A.
Cowan; and that on June 17, 1914, Cowan
sold and conveyed that interest to one Matt
Harris. There was testimony which would
have warranted a finding that the purchase
of the Egan interest by Cowan was on Stitt
and the Paynes' account, and that he held
the title thereto as trustee for them. It is
held in this state that a transfer by one
partner of his interest in partnership prop-
erty to his copartners is not a change of in-
terest within the meaning of a stipulation
like the one in question. Ins. Co. v. Cohen,
47 Tex. 406, 26 Am. Rep. 298. So the trial
court, having made such a finding, might
very well have concluded that the transfer
from Egan to Cowan was really a transfer by
Egan to his copartners and therefore was not
a violation of the stipulation in question. Ap-
pellees insist that it appeared that Harris
also held title to the Egan interest as such a
trustee. But we do not think so. The testi-
mony was that Cowan took the title to the
Egan interest with the understanding be-
tween him and Stitt and the Paynes that he
was to convey it to whomsoever they direct-
ed him to convey it, and that they after-
wards directed him to convey the interest to
Harris. There was testimony that Harris
never paid any part of the purchase price he
agreed to pay for the interest, and that it was
understood between him, Stitt, and the Paynes
that he was not to participate in the manage-
ment of the partnership business, nor share
in the profits and loss thereof, until he dis-
posed of a business he was engaged in at
Killeen, and that he never disposed of that
business. We do not think the facts stated
warranted a finding that Harris was not the
owner of the Egan interest, but held same as
trustee for Stitt and the Paynes. We con-
clude that the change shown to have occur-

red in the ownership of the Egan interest was a violation of the stipulation in question. If it was, then of course the judgment against appellant was not warranted, Ins. Co. v. Morgan (Tex. Civ. App.) 202. S. W. 784, unless it appeared, as appellees insist (and, as appears further on in this opinion, we agree) it did, that appellant waived, or was estopped from asserting, the right it had to claim that the violation operated to forfeit appellees' rights under the policy.

[3] The policy contained the usual "iron safe" or "record warranty" clause declaring that it (the policy) should be void if the insured failed to make inventories as specified, or failed to keep a set of books as specified, or, having made such inventories and kept such books, failed to produce same for examination by appellant in the event of a loss. Appellant insists that it conclusively appeared from the testimony that appellees did not comply with the stipulation referred to in any of the respects stated, and therefore that the judgment against it was unwarranted. We agree that it so appeared, and that the judgment is therefore wrong, so far as it is in appellees' favor for the amount of the risk on the stock of grain and feed stuff, unless it appeared, as appellees insist and we agree, it did, that appellant had waived, or was estopped from asserting, the forfeiture it was entitled to claim, because of appellees' failure to comply with the stipulations in said "iron safe" clause.

The trial court and jury had a right to believe from testimony before them that the facts with reference to the waiver and estoppel asserted by appellees, though disputed, were as follows: On the morning after the fire, appellant's adjuster, one Buckalew, who called on appellees for the purpose of examining appellees' books and records, was informed by appellee Stitt that some of the books and the "invoices and papers generally" were destroyed by the fire, and that the books and records not so destroyed would not, alone, show the amount of the loss. A few days later, while Buckalew was engaged in examining the books turned over to him by appellees, Stitt "gave him all the details" of the transfer of the Egan interest to Harris. Later Buckalew declared to one Wood, who repeated the statement to appellee Stitt, that he (Buckalew) "was not going to settle with" appellees, and that they "might just as well sue." Still later Buckalew called on appellees "to discuss the loss" with them, when he was reminded by appellee Stitt of the statement he (Buckalew) made to Wood, and informed that if he did not intend to pay appellees' loss "until they went into court" appellees "did not have any more time to spend getting up the proof of loss or information." Buckalew thereupon denied that he had made any such statement to Wood, and declared it was his intention to pay appellees according to their loss, and that his purpose in then calling on appellees was to request them to "give further information concerning the loss, particularly as to the loss on machinery." He then requested appellee Stitt to "get up all the data he could on the machinery," specifically requesting Stitt to "furnish some catalogues of new machinery in order that he (Buckalew) might be in a position to make some intelligent estimate as to the difference between the value of old and new machinery," and to get all the information he could "concerning the salvage that was hauled away." Stitt, relying on the assurance of Buckalew that he intended to pay the loss appellee sustained, "did everything Buckalew requested him to do with reference to furnishing information about the machinery, the salvage, and the grain loss," and in doing so incurred expense besides devoting several days' time to the work.

The rule seems to be (14 R. C. L. 1197) that—

"When an insurer, with knowledge of any act on the part of the insured which works a forfeiture, enters into negotiations with him which recognize the continued validity of the policy, and thus induces him to incur expense or trouble under the belief that his loss will be paid, the forfeiture is waived."

Appellant insists the rule was not applicable in the case because, it says, it did not appear that, at the time he declared he intended to pay the loss and requested Stitt to get information he needed to enable him to determine the amount thereof, Buckalew knew that appellees had not made an inventory of their stock as required by the "record warranty clause" in the policy and had not kept a set of books in the manner required by said clause. But we think the trial court had a right to conclude that Buckalew knew about all the violations of terms of the policy within a very few days after the fire occurred. He testified it was his duty as appellant's adjuster to ascertain if there had been such violations, and it affirmatively appeared that he knew about the transfers of the Egan interest and that some of appellees' books and all their "invoices and records" had been destroyed by the fire. It further appeared that the books not so destroyed were promptly turned over to and examined by Buckalew, and there was nothing in his testimony as a witness suggesting he was ignorant of any fact connected with violations of terms in the policy.

It appears in the record that when Buckalew was informed that some of appellees' books and "all their invoices and records" had been destroyed by the fire, he had appellees to execute and deliver to him a "nonwaiver agreement," in which it was declared that any action taken by appellant—

"in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property * * * shall not waive or invalidate any of the conditions of the

policies * * * and shall not waive or invalidate any rights whatever of either of the parties to this agreement. The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage without regard to the liability of the insurer."

Appellant insists that, in view of the agreement, it should not be held that the effect of Buckalew's conduct was to waive or estop it from asserting the forfeitures, and cites Ins. Co. v. Nunn, 98 Tex. 191, 82 S. W. 497, 68 L. R. A. 83, and cases following same, as authorities supporting its contention. It did not appear in any of the cases referred to, as it does in this one, that the insured was induced to go to trouble and expense by assurance of the insurer that the loss covered by the policy would be paid. Had it so appeared, we have no doubt the ruling in those cases would have been different. Insurance Co. v. Draper, 187 Ala. 103, 65 South. 923; Tinsley v. Insurance Co., 199 Mo. App. 693, 205 S. W. 78.

We do not think there is merit in appellant's contention that the right of appellees to maintain the suit appeared to be barred by the two and four year statute of limitations, nor in its contention that the trial court erred when he refused to admit as evidence the copy of the opinion of the Supreme Court in McPherson v. Insurance Co. (Tex. Com. App.) 222 S. W. 211.

The judgment is affirmed.