## HOME INS. CO. v. FORT WORTH GRAIN & ELEVATOR CO. (No. 7141.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1924. Rehearing Denied June 18, 1924.)

1. **Principal and agent** &#11015;23(1)—**Fact of agency not provable solely by words and acts of assumed agent.**

The fact of agency may not be shown solely by the words and acts of the assumed agent.

2. **Principal and agent** &#11015;149(1)—**Asserted principal not bound by acts of assumed agent unless former ratifies acts of latter.**

An asserted principal could not be bound by the acts of one assuming to act for it, unless the former expressly or impliedly ratified the acts of the latter.

3. **Principal and agent** &#11015;161(1)—**Duty of insurer to repudiate assumed agency on receiving notice of its existence.**

When notice of adjuster's assumed agency and its operation to the prejudice of insured was brought home to defendant insurer, for whom adjuster assumed to act, it was insurer's duty to speak promptly and repudiate the authority adjuster had assumed.

4. **Principal and agent** &#11015;137(1)—**Insurer held estopped to deny adjuster's authority.**

Where insurer, upon learning that adjuster had assumed to represent it, not only failed to repudiate his act, but refused to disclose who was representing it, and availed itself of the facts and evidence procured by the adjuster under his assumed authority, it is estopped to deny his authority, as the court will not aid a fraud.

5. **Principal and agent** &#11015;173(3)—**Evidence held to justify finding insurer impliedly ratified assumed agency.**

Trial court *held* authorized to find, and presumed to have found, that defendant fire in-

surance company impliedly ratified the as-
sumed authority exercised by an adjuster to
act for it in dealing with insured.

**6. Insurance ⊜⇒394—Insurer held to waive
right to forfeiture for breach of warranty
by promise to pay loss.**

Where fire insurer's agent assured insured
that, notwithstanding insured's breach of war-
ranty, the policy would be paid, and insured re-
lied thereon and expended time and money in
procuring and furnishing the agent evidence of
the value of the property destroyed and of that
salvaged, insurer thereby waived its right to
a forfeiture.

Error from District Court, Tarrant Coun-
ty; Ben M. Terrell, Judge.

Action by the Fort Worth Grain & Elevat-
or Company against the Home Insurance
Company. Judgment for plaintiff, and de-
fendant brings error. Affirmed.

Locke & Locke and Paul M. O'Day, all
of Dallas, for plaintiff in error.

Capps, Cantey, Hanger & Short, J. W.
Stitt, and W. D. Smith, all of Fort Worth,
for defendant in error.

SMITH, J. This suit was brought by the
grain elevator company against the insur-
ance company to recover upon a fire insur-
ance policy in the sum of $1,000, $700 upon
stock, and $300 upon machinery. Policies
were also carried in a number of other in-
surance companies covering the same risk.
It is conceded that the property covered was
destroyed by fire during the apparent life of
the policy, on October 27, 1914, but the com-
pany contested the claim for insurance upon
several grounds, among them being the con-
tention that the policy sued on was void, be-
cause during its life the title to the insured
property was transferred from the assured
to others, without the consent of the insurer,
and because the assured breached various
record warranty and iron-safe clauses em-
braced in the policy, particularly those re-
quiring the assured to take an inventory of
the stock of goods, and to make and safely
keep a complete set of books and records.
The assured undertook to avoid the effect of
conceded breaches of these warranties by
the contention that the company, by waiving,
forfeited its right to enforce said provisions
of warranty.

The principal questions of law raised on
this appeal appear to have been discussed
and decided by the Court of Civil Appeals
of the Sixth District in a companion case,
growing out of the same fire and involving
a similar policy containing provisions identi-
cal with the provisions here relied upon by
the company as defenses to this suit. Insur-
ance Co. v. Fort Worth Grain & Elevator,
etc., Co. (Tex. Civ. App.) 257 S. W. 273. The
facts in that case are similar to those in
this case, except that they do not in that
case raise the question of agency, as they do
here; it is perhaps also true that the facts
relating to unauthorized transfer of title
differ in the two cases. But as writ of er-
ror has been granted by the Supreme Court
in the cited case, its decision is of no par-
ticular value here, except as it may be per-
suasive. The two cases should be read to-
gether, particularly for a full view of the
facts.

It is contended by defendant in error that
after the alleged agent of the company ascer-
tained that the warranties and covenants in
the policy had been breached by the assured,
he stated to the latter that the policy would
be paid according to the loss, notwithstanding
the breach of the contract, and that in re-
liance upon this representation the assured
changed his position for the worse by go-
ing to the trouble and expense of procur-
ing data as to the loss and value of the prop-
erty destroyed; and it is then contended by
the assured that by this conduct the com-
pany waived its right to insist upon the as-
sured's compliance with the warranties now
urged in defense of the suit. If defendant
in error's claim of waiver is sustained, then
all other questions in the case are immate-
rial to the decision. With that theory in
mind, we will now consider the question of
waiver, the first phase of which is in itself
a question of agency.

[1] One J. D. Buckalew appears to have
been an independent fire insurance adjuster,
who was not regularly employed by any com-
pany. When employed by a particular com-
pany it was in specific cases only, and such
employment ended with the adjustment of
each case. When the fire in controversy oc-
curred, two or three different companies,
but not the plaintiff in error herein, em-
ployed Buckalew as an adjuster on the case.
In pursuance of the employment, he ap-
peared upon the scene of the fire the day
after it occurred and began negotiations with
the assured looking to disposition of the
claim. On this occasion, according to the
jury's findings, he told the assured that he
represented plaintiff in error, the Home
Company, as well as other companies, al-
though as a matter of fact he had no au-
thority to act for plaintiff in error. A day
or two later he entered into a written agree-
ment with the assured by which the latter
was authorized to sell certain property sal-
vaged from the fire; Buckalew signed this
agreement, specifically, as the agent of plain-
tiff in error as well as his own companies. A
few days later he and the assured entered
into a written nonwaiver agreement, and
this he also signed specifically as the agent
of plaintiff in error. A little later, he sub-
jected the manager of the assured to a sworn
examination, procuring from him invento-
ries, books, and papers of the assured.
Throughout these negotiations he led the

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

assured to believe that this action was taken and these things done in behalf of plaintiff in error, as well as other companies represented by him, and it was in response to these representations, and in a full belief of Buckalew's agency for plaintiff in error and the other companies, that the assured entered and continued in the negotiations, disposed of the salvage, furnished evidence, submitted to sworn examinations, and otherwise entered whole-heartedly into what appeared to be a good-faith effort to ascertain all the facts upon which to determine whether or not the loss was one to be adjusted. Standing alone, however, none of these facts, nor all of them considered together, could serve to establish the relation of principal and agent between plaintiff in error and Buckalew, when no such relation actually existed, as was the case; for in no case may the fact of agency be shown solely by the words and acts of the assumed agent. Mechem, Agency, §§ 285, 289.

[2, 3] As Buckalew admittedly had no express authority to act for plaintiff in error, the latter may not be bound by his acts unless it expressly or impliedly ratified those acts. It is not contended, nor can it be, that there was an express ratification, and hence the inquiry is now narrowed to the one question: Was there an implied ratification? The facts in this connection, considered, as they must be, in the light most favorable to defendant in error, are these: After the occurrence of the facts we have set out, wherein it appears that Buckalew had represented himself to the assured to be the agent of plaintiff in error, and by reason of such representation, which assured relied upon, the assured furnished the inventory, books, records, and all other information called for by Buckalew, and submitted to an examination by Buckalew, and otherwise subjected himself to the instructions of Buckalew as its assumed agent, plaintiff in error sent an adjuster of its own selection to Fort Worth, and to Buckalew, who gave the adjuster access to all of Buckalew's files, as well as to the assured's lists, books, and records, and the agent thoroughly examined these papers, acquainted himself with their contents, and thereby not only learned all the facts Buckalew had ascertained through his assumed agency, but was also apprised of Buckalew's assumption of authority to represent plaintiff in error, and of his acts by virtue of that assumption.

We think that at this juncture, when notice of the assumed agency and its operation to the obvious prejudice of the assured was brought home to plaintiff in error, it was clearly the latter's duty to speak, and speak promptly and in no uncertain manner, and repudiate the authority Buckalew had assumed to exercise in its behalf. The leading authority on agency quotes and approves this statement of the rule, that—

"It is true that mere knowledge, on the part of the principal, of an agent's unauthorized action, will not make silence or noninterference in all cases amount to ratification. But it would where the party dealing with the agent is misled or prejudiced, or where the usage of trade requires, or fair dealing demands, a prompt reply from the principal." Mechem, Agcy. §§ 451 et seq., 468; Bigelow, Estoppel, p. 648 et seq.

But, instead of pursuing this course, which is dictated by every feeling of fair dealing and good faith, plaintiff in error not only failed to speak up and repudiate Buckalew's assumption of authority to act for it, but shortly afterwards, and persistently thereafter, affirmatively refused to disclose that Buckalew was not its agent, or who was in fact representing it in the matter. So long was the assured permitted to proceed under the deception practiced by Buckalew and acquiesced in by plaintiff in error that he had placed all the material facts of his case in the possession of Buckalew, and therefore in the possession of plaintiff in error. And so by remaining silent, when in good conscience it should have spoken, plaintiff in error assumed a solemn duty to thereafter continue silent, and take the consequences of the acts of the assumed agent.

[4] Plaintiff in error not only failed to repudiate the acts of Buckalew in assuming to be its agent, but it availed itself of every benefit derived from Buckalew's acts done under and by virtue of the assumed authority; it appropriated those benefits to its own use, and now seeks to defeat the assured's suit with the very facts and evidence first procured by Buckalew, under and by virtue of that assumed authority. To permit plaintiff in error to speak now, when it was silent then, would lend aid to the practice of a fraud, to which this court declines to be a party. 10 R. C. L. p. 765; Bigelow, Estoppel, p. 648, § 4; Mechem, Agcy. § 434, et seq. It is said by Mr. Mechem that—

"There is, further, ordinarily no more certain and satisfactory a method of manifesting approval of an act than by voluntarily and knowingly taking the benefits which flow from its performance; and it is a general rule, of constant application in the law of agency, that he who, voluntarily and with knowledge of the facts, accepts the benefit of an act purporting to have been done on his account, by his agent, thereby ratifies it and makes it his own as though he had authorized it in the beginning."

And again:

"One, therefore, who voluntarily accepts the whole or any part of the proceeds of an act done by one assuming, though without authority, to be his agent, must ordinarily be deemed to ratify the act and take it as his own with all its burdens as well as all its benefits. He may not ordinarily take the benefits and reject the burdens, but must either accept them or reject them as a whole."

[5] We think it quite clear that under the facts stated the court below was authorized and is presumed to have found that the insurance company ratified the assumed authority exercised by Buckalew to act for plaintiff in error, and that by appropriating to its own use the benefits flowing from the assumed agent's acts in its behalf, plaintiff in error is estopped to deny the authority of Buckalew to bind it.

The jury found, upon sufficient evidence, that while acting under the assumed authority, and after he had learned of the alleged breaches of warranty now urged as defenses by plaintiff in error, Buckalew assured defendant in error that the policy here sued on would be paid according to the loss sustained, and by this assurance induced defendant in error to go to some trouble and expense in assembling facts essential to proofs of loss, salvage, value of property destroyed, etc. It is now settled that—

"Where there has been a breach of a condition in a policy and the insurer, with full knowledge of the facts, and without denying its liability on that ground, apparently recognizes the validity of the policy, and requires the insured to furnish, and he does furnish at some trouble and expense, proofs of a loss under the policy, the insurer is precluded from setting up such a breach as a defense in an action thereon." Bigelow, Estop. p. 717; 26 C. J. p. 335, § 420;. Insurance Co. v. White (Tex. Civ. App.) 177 S. W. 162.

Mr. Bigelow thus states the rule:

"Where by the course of conduct of one party to a contract, entitled to the performance of certain terms or conditions thereof, the other party has been led to believe, as a man of average intelligence, that such performance will not be required, until it has become too late to perform, or until to insist upon performance would work material injustice, the person who has so conducted himself is barred from asserting the right he had."

And again:

"Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon a forfeiture which by the express terms of the contract might be claimed."

[6] Applying the rule to the facts of this case, to which it is clearly appropriate, we hold that when Buckalew assured the defendant in error that the policy would be paid according to the loss sustained, and the assured relied thereon, and at the agent's instance changed his position for the worse by expending time and money in procuring and furnishing the agent evidence of the value of the property destroyed and of that salvaged, the insurer thereby waived its right to a forfeiture because of the breach of warranty, of which it had notice.

These conclusions render immaterial all of plaintiff in error's assignments of error, except one raising the question of limitation. The latter will be overruled as being without merit, and the others because immaterial.

The judgment is affirmed.