**GERMANIA FIRE INS. CO. v. FORT WORTH GRAIN & ELEVATOR CO. (No. 6794.)** *

(Court of Civil Appeals of Texas. Austin. March 13, 1925. Rehearing Denied April 8, 1925.)

**I. Insurance ⬅328(9)—Sale by partner of interest in insured property to another is not change of title and possession.**

Sale by partner of his interest in insured property to another partner is not change of title and possession, avoiding fire policy or defeating recovery.

**2. Insurance ⬅328(9)—Change of title to partnership property held not such as to avoid fire insurance policy.**

Where person, to whom the legal title of partner's interest passed, was never in possession of any of the partnership property insured, and did nothing to affect the risk, as a result of which the proprietary interest of the remaining partners was increased, as was their motive to protect the property from fire, held

that the change of title to such person was not such as to avoid the policy.

**3. Insurance ⬅335(1)—Breaches of iron-safe clause, and of warranties as to inventories and keeping of books, defeats recovery, unless excused.**

Breaches, by insured, of iron-safe clause, and of promissory warranties as to inventories and keeping of books, defeats recovery, unless excused by insurer.

**4. Principal and agent ⬅22(2)—Declarations and acts of agents are admissible as corroborative of other evidence tending to show agency.**

Declarations and acts of agents are admissible as corroborative of other evidence, not necessarily conclusive in itself, tending to show agency.

**5. Principal and agent ⬅22(2)—Acts or declarations of agents admissible to show agency otherwise indicated.**

Acts or declarations of agents are admissible as circumstances tending to show agency otherwise indicated.

**6. Insurance ⬅668(2)—Whether certain individual had authority from insurer to represent it in adjusting fire loss held for jury.**

Whether a certain individual had authority from insurer to represent it in adjusting fire loss held for jury.

**7. Insurance ⬅565—Insurer held estopped from denying authority of certain person to represent it in adjusting fire loss.**

Insurer held estopped from denying authority of certain person to represent it in adjusting fire loss, where it availed itself of all of the services of such person in attempting to adjust loss, and used such information to defeat the policy, and insured in giving it acted in good faith, and at expense and loss of time.

**8. Insurance ⬅629(1)—Pleading, alleging insurance contract and compliance with its terms, held to allege cause of action.**

In action against insurer to recover fire loss, pleading, setting forth insurance contract and compliance with its terms by plaintiff, held to allege cause of action.

**9. Insurance ⬅645(2)—Forfeiture matter to be pleaded and proved.**

Forfeiture, as defense, was matter to be pleaded and proved by insurer.

**10. Limitation of actions ⬅40(1)—Insured's plea of waiver and estoppel, interposed as defense to claim of forfeiture, held not "cause of action" within statute.**

Insured's plea of waiver and estoppel, interposed as defense to reply, alleging forfeiture, held not "cause of action" within statute of limitations barring cause of action by delay in pleading it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action.]

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted June 3, 1925.

**11. Insurance ☞75—Insurer held charged with notice as to assumed authority of person to act as its agent.**

Insurer *held* charged with notice as to assumed authority of person to act as its agent, and of insured's dealing with him as insurer's agent.

**12. Insurance ☞94—Fair dealing required insurer to repudiate wrongful assumed agency of individual with whom insured dealt.**

Where insurer knew that a certain person assumed to act for it in adjusting fire loss, and that insured dealt with such person, believing he was the agent of insurer, fair dealing required insurer to repudiate such assumed agency, if it was unauthorized, instead of accepting the benefits of such person's services.

**13. Limitation of actions ☞40(1)—Supplemental plea, explaining conditions under which interest of partnership was transferred to another, as alleged in original pleadings, held not new cause of action within statute of limitations.**

Supplemental plea of plaintiff interposed against insurer's plea of forfeiture, based on alleged transfer of partnership property within forfeiture clauses, and explaining the conditions under which interest in the partnership was transferred to a certain person, as alleged in the original pleadings, *held* not new cause of action within statute of limitations.

**14. Insurance ☞645(5)—Fatal variance held not to exist between allegations and proof as to partnership interest of person to whom partner's interest was transferred.**

Fatal variance *held* not to exist between allegations and proof as to partnership interest of person to whom partner's interest was transferred.

**15. Insurance ☞593(1)—Party transferring partnership interest before filing of suit by partner not entitled to part of judgment recovered.**

Party transferring partnership interest before filing of suit by partner is not entitled to part of judgment recovered.

**On Motion for Rehearing.**

**16. Appeal and error ☞930(3)—Presumed that trial court's finding on necessary issues supported judgment.**

Presumed that trial court's finding on issues not submitted to jury supported judgment.

**17. Insurance ☞646(2)—Showing of noncompliance by insured, with forfeiture clauses, held prerequisite to insurer's right to assert forfeiture.**

Showing by insurer of noncompliance by insured, with clauses, breach of which constituted ground for forfeiture, *held* prerequisite to insurer's right to assert forfeiture.

**18. Insurance ☞665(8)—Evidence held sufficient to sustain finding of insurer's waiver of clauses pertaining to taking of inventory and keeping of books and invoices.**

Evidence *held* sufficient to sustain a finding of insurer's waiver of clauses pertaining to taking of inventory and keeping of books and invoices.

Error from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by the Fort Worth Grain & Elevator Company against the Germania Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error.

Capps, Cantey, Hanger & Short, J. W. Stitt, and W. D. Smith, all of Fort Worth, for defendant in error.

BAUGH, J. The Fort Worth Grain & Elevator Company sued the Germania Fire Insurance Company, in the district court of Tarrant county, Tex., on a policy for $2,000 issued by said Insurance Company to the Grain & Elevator Company on May 2, 1914, insuring it against loss by fire for a period of one year. Of this amount $800 was on the machinery and $1,200 on its stock of goods—grain, flour, feed stuffs, etc. On October 27, 1914, a fire destroyed the property insured, and suit was filed on February 15, 1915. The case was not tried, however, until May 20, 1922. For brevity and convenience the parties will be designated as the Insurance Company and the Elevator Company, and as they appeared in the lower court:

In addition to general and special exceptions and general denial, the Insurance Company defended on the ground that plaintiff was guilty of numerous breaches of warranties in the policy. By supplemental petition plaintiff pleaded waiver by the Insurance Company of all breaches by plaintiff, and conduct by the Insurance Company, which estopped it from setting up such breaches as a defense. The case was submitted to a jury on special issues, on which they found for plaintiff, and on which the court rendered judgment for the full amount of the policy. From this judgment this appeal is prosecuted.

**Opinion.**

The first assignment complains of the refusal of the trial court to instruct a verdict for the Insurance Company, on the ground that a change in the ownership of the property insured, without the knowledge or consent of the Insurance Company, had taken place after the issuance of the policy and before the fire, in violation of the provisions of the policy.

The policy, amongst numerous other provisions for forfeiture, contained the following language:

"This entire policy, unless otherwise provided by agreement hereon or added hereto,

shall be void * * * if any change, other than by death of the insured, takes place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise. * * *"

The proof showed that, when the policy was issued on May 2, 1914, the Fort Worth Grain & Elevator Company was a partnership composed of M. M. Egan, J. R. Stitt, and Mrs. E. E. Payne, wife of F. W. Payne; that on June 15, 1914, M. M. Egan assigned his interest therein to D. A. Cowan; that on June 17, 1914, D. A. Cowan assigned same to Matt Harris, in whose name it appeared at the time of the fire. After the fire Matt Harris, who was the brother-in-law of J. R. Stitt and F. W. Payne, retransferred his interest in the partnership and in the policy to Stitt and Payne. The consideration for the assignment from Egan to Cowan was $2,000 cash, paid by Stitt and Payne, and the execution of six notes for $1,000, each signed by Cowan, Stitt, Payne, and Mrs. Payne. At the same time Stitt and Payne secured Cowan against any liability on his part for the payment of these notes. Harris paid no money to any one upon the assignment to him, but it was agreed between them that, when Harris could sell his stock of goods at Killeen and pay the $2,000 paid out by Stitt and Payne, he was to come in as a partner. However, this was never done. Neither Cowan nor Harris ever had anything to do with the conduct of the business of the Elevator Company, nor did they ever have possession, control, or management of any of the property insured. These paper transactions appear to have been nothing more nor less than a circuitous method of getting Egan out of the partnership. Even though the legal title to Egan's interest was in Harris, he asserted no interest in the business, and, to all intents and purposes, it was owned and controlled by and entirely in the possession of Stitt and Payne, the other two members of the partnership.

In support of its contention plaintiff in error cites, among other cases, Ins. Co. v. Davis (Tex. Civ. App.) 167 S. W. 175; Laundry Co. v. Ins. Co., 121 Tenn. 13, 113 S. W. 394, 21 L. R. A. (N. S.) 442; Ins. Co. v. Ransom (Tex. Civ. App.) 61 S. W. 144; Ins. Co. v. Bank, 18 Tex. Civ. App. 721, 45 S. W. 737. In all these cases, save that of Ins. Co. v. Davis, there was a complete change of both the ownership and the possession of the property insured. In the Davis Case the owner of the property sold a one-third interest to each of two other partners and placed one of them in possession of the property insured.

[1] It seems settled in this state that a sale by one partner of his interest in the insured property to another partner is not such a change of title and possession as to avoid the policy or defeat a recovery. Tex. Banking & Ins. Co. v. Cohen, 47 Tex. 412, 26 Am. Rep. 298; Ins. Co. v. Hill (Tex. Civ. App.) 127 S. W. 283. This accords with the great weight of authority. 26 C. J. 236. But, even though the legal title to Egan's interest passed to Harris, he was never in possession of any of the property insured and did nothing to affect the risk. On the other hand the proprietary interest of Stitt and Payne in the property insured was increased by this transaction, their loss increased in case it burned, and their motive to protect it from fire thus increased also. As stated by Justice Greenwood, in Ins. Co. v. O'Bannon, 109 Tex. 281, 206 S. W. 815, 1 A. L. R. 1407:

"It is settled law in this state that a fire insurance policy is not violated by a change of title—'not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire.' New Orleans Ins. Co. v. Gordon, 68 Tex. 149, 3 S. W. 720; Home Mut. Ins. Co. v. Tompkies, 30 Tex. Civ. App. 404, 71 S. W. 813."

See, also, Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 257 S. W. 273.

[2] Under this rule announced by our Supreme Court, we think there was no such change of title as avoided the policy, and this assignment is overruled.

[3] The second assignment and four propositions thereunder all relate to violation of the iron-safe clause, and breaches of the promissory warranties to take proper inventories and keep proper books, as specified in the policy. It is clear that these provisions were breached in whole or in part; and, unless excused otherwise, it is well settled that such breaches by the insured defeat a recovery. Camden Fire Ins. Co. v. Yarbrough (Tex. Com. App.) 215 S. W. 842; McPherson v. Camden Fire Ins. Co. (Tex. Com. App.) 222 S. W. 211; Ins. Co. v. Flewellen (Tex. Civ. App.) 221 S. W. 630; Fire Ins. Co. v. Adams (Tex. Civ. App.) 158 S. W. 231; Royal Ins. Co. v. Okasaki (Tex. Civ. App.) 177 S. W. 200; Western Assurance Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661. The Elevator Company defended, however, on the grounds of waiver and estoppel. In answer to special issues submitted to them, the jury found that J. D. Buckalew, acting for the Germania Insurance Company, on or about December 19, 1914, told J. R. Stitt that the insurance would be paid according to the loss sustained; that Stitt relied upon such statement; and that Buckalew had, at that time, authority from the Germania Insurance Company to adjust this loss.

Without detailing the evidence, we think it clearly appears that, prior to December 19th, Buckalew knew of all breaches of the policy of which the insured was guilty.

Plaintiff in error's chief contention is, however, that there is no evidence to show that Buckalew had any authority to represent the Germania Insurance Company. The Insurance Company claimed that it had employed the Bates Adjustment Company of Dallas to adjust this loss, and denied that it had ever employed Buckalew for that purpose. Buckalew also testified that he was not employed by the Germania. There was testimony, however, that soon after the fire Buckalew came to Stitt and procured a nonwaiver agreement on behalf of the Germania; that he also signed for it, as its adjuster, an agreement authorizing Stitt to sell the salvage; that he represented to Stitt that he was adjuster for all companies with which the Elevator Company held policies, including the Germania; that thereafter, when Buckalew took the insured's sworn written examination, he told Stitt that it was for all of said companies; that, after negotiations for adjustment were begun, one or perhaps · two of the other companies carrying insurance on this property (there were six in all) were taken away from Buckalew; that he settled for three of them; that some time afterwards Buckalew told Stitt that he did not represent all of said six insurance companies, but declined to tell him which ones he did not represent; that it had been intimated to Stitt that the Bates Adjustment Company were representing the Germania, but that, in response to a long-distance call to them, they had denied such representation; that letters, both to the home office of the Germania and to the Bates Adjustment Company from Stitt, asking who their adjuster was, were never answered; that, though Buckalew denied that he made any charge against the Germania, his books showed charges against two companies, not named on his books, for services in connection with this fire, which could not be accounted for except by including the Germania; that the plaintiff in error knew that Buckalew assumed to act for it, both in the nonwaiver agreement, and in the salvage agreement; that the Bates Adjustment Company, acting for the Germania, knew of Buckalew's efforts, went to his office, consulted with him, and obtained and utilized all the information he had obtained from the Elevator Company in his investigation, but at no time did either the Germania or the Bates Adjustment Company ever deny or repudiate the acts of Buckalew, nor send an adjuster to see the insured. On the other hand they utilized the information obtained by Buckalew while he was acting for the Germania.

[4-6] It is elementary that agency cannot be established by the words or acts of the assumed agent taken alone. But, if there be other evidence tending to show agency, his declarations and acts are admissible as corroborative. American Cast-Iron Pipe Co. v. Birmingham Tailoring Co., 206 Ala. 609, 91 So. 484; Collier v. Schoenberg, 26 Ga. App. 496, 106 S. E. 581. Nor need such evidence in itself be conclusive. 22 C. J. 377. And where agency is otherwise indicated, the acts and declarations of the agent are admissible as circumstances tending to show agency. Daugherty v. Wiles (Tex. Com. App.) 207 S. W. 901; Bass v. Export & Import Corporation, 124 S. C. 346, 117 S. E. 594, 30 A. L. R. 168; Render v. Hill Bros., 30 Ga. App. 239, 117 S. E. 258. In the light of these authorities we think the testimony above outlined was sufficient to go to the jury on the issue submitted, and, having found against the Insurance Company thereon, we will not disturb that finding.

[7] But, even if we be in error as to this issue, we think that the Insurance Company is estopped to deny his (Buckalew's) agency, after having availed itself of all his services in the matter, and then, having sought to use the information so obtained to defeat the policy, the insured having acted in good faith, and having furnished such information at expense and loss of time. This same question of estoppel was raised in Home Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 262 S. W. 871, in a companion case growing out of the same fire, and the activities of this same agent. The facts appear to be practically identical with those in the instant case. Judge Smith of the San Antonio court in that case ably discussed the estoppel feature, and we deem further discussion of it here unnecessary. See, also, 22 Cyc. 1134g; Sullivan v. Ramsay (Tex. Civ. App.) 155 S. W. 588.

[8-10] There is no merit in plaintiff in error's sixth proposition. When the plaintiff pleaded the insurance contract and compliance with its terms, it pleaded a complete cause of action. Forfeiture as a defense was a matter to be pleaded and proven by the Insurance Company. Hay v. Bankers' Life Co., 207 Mo. App. 277, 231 S. W. 1035; Holt v. Love (Tex. Civ. App.) 168 S. W. 1020. The Elevator Company's plea of waiver and estoppel was in reply to the Insurance Company's defense, and not a "cause of action," within the meaning of the statute of limitation, so as to be barred by a delay in pleading it. Sebree v. Patterson, 92 Mo. 451, 5 S. W. 31; State v. Stuart, 111 Mo. App. 478, 86 S. W. 475.

[11, 12] What we have already said sufficiently disposes of the eighth proposition as to the declarations of an agent. In any event, when the principal, the Germania Insurance Company, through its regularly employed and admitted agents, came into possession of the nonwaiver agreement and the

salvage agreement signed by Buckalew as its agent, it was charged with knowledge that Buckalew was assuming to act as its ,agent, and that the Elevator Company had so treated and dealt with him. Fair dealing then demanded that it repudiate his assumed agency instead of accepting the benefits of his services, if he, in fact, had no authority to act for it.

[13-15] In the original and amended petition plaintiff alleged that the partnership, at the time of the fire, was composed of J. R. Stitt, F. W. Payne, and his wife, E. E. Payne, and Matt Harris; and that, prior to filing suit, Harris sold and conveyed his interest to the other partners named. By supplemental petition, in response to the Insurance Company's plea of forfeiture for change of ownership of the property insured, the plaintiff pleaded as follows:

"That no one except the plaintiffs made any payment for said Egan's interest in said business; that plaintiffs made the cash payment that was made to said Egan for his interest in said business and paid all the notes given him as part of . the purchase price thereof, said notes being signed by plaintiffs in connection with the purchase of said Egan's holdings in said partnership and business, and said Matt Harris never paid anything for the said Egan's interest in said business, and having never participated in the profits nor in the losses of said business, and by agreement with plaintiffs he was not to participate in any profits nor share any of the losses in said business until he had paid something for the interest in said business transferred to him by the said Egan."

The proof substantially sustained these allegations. It is contended by plaintiff in error: (1) That this was in effect an allegation by subsequent amendment, that Harris was not a partner, as he was, alleged to be in the original petition, and amounts to setting up a new cause of action barred by limitation, since the supplemental petition was not filed until six or more years after the original petition was filed; (2) that the proof shows that Harris was not a partner and therefore a fatal variance with the allegations of the original pleadings.

What we have said above in discussing the sixth proposition disposes of this first contention; that is, that such supplemental plea does not set up a new "cause of action" within the statutes of limitation, nor do we think there is a fatal variance between the allegations and the proof. The legal title to Egan's interest was in Harris. German Alliance Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Civ. App.) 257 S. W. 273. In the plea above quoted the Elevator Company was merely defending against the Insurance Company's plea of forfeiture on the ground that the transfer of the property to Harris was not such a transfer as would forfeit the policy, and not a denial of the legal title of Harris as

alleged in its original pleadings. It was not then a new or different cause of action. The interest of Harris, assigned to him by written transfer, was recognized throughout. Having transferred it to the plaintiffs before suit was filed, he was, of course, entitled to no part in the judgment. The cases cited by plaintiff in error are not applicable to the facts of this case. In each of those cases the proof showed that one or more parties who held an actual interest in the cause of action was not joined as plaintiff. Neal v. Adkins (Tex. Civ. App.) 145 S. W. 264; Floore v. Burgher (Tex. Civ. App.) 128 S. W. 1152; Ry. Co. v. Fruit Co. (Tex. Civ. App.) 170 S. W. 851. No one who had any interest was omitted from this suit, and the judgment, as rendered, disposes of all parties who had any interest in the subject-matter of the suit under both the pleadings and the proof.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

Plaintiff in error has filed a motion for rehearing herein in which it urges that, if the judgment of the trial court is not reversed, it should at least be reformed so as to permit a recovery by the Elevator Company of the insurance on the machinery only, and, as thus reformed, be affirmed. This contention is based upon the opinions of section A of the Commission of Appeals in the companion cases of the German Alliance Insurance Co. v. Fort Worth Grain & Elevator Co., 269 S. W. 430, and the Home Insurance Co. v. Fort Worth Grain & Elevator Co., 269 S. W. 432, rendered in said causes on March 11, 1925, and not yet [officially] reported. The opinions of the Courts of Civil Appeals in those cases appear in 257 S. W. 273, and in 262 S. W. 870, respectively. In those cases the Commission of Appeals reformed and affirmed the judgments of the trial courts so as to allow recovery of insurance on the machinery only. As to the insurance of the stock of goods, recovery was denied. In doing so, Judge Bishop of the Commission used the following language:

"While, as stated, there is evidence showing the adjuster was informed and knew that there had been a transfer of interest in violation of the terms of the policy, and that section 3 of the record warranty clause had not been complied with, there is no evidence to indicate that either the adjuster or the insurance company knew that sections 1 and 2 of the record warranty clause had not been complied with.

"The burden is on the insured to show that the insurance company knew the facts which would entitle it to insist on forfeiture before they could claim that its right to so insist was waived. Here are shown four grounds, on each of which the insurance company, if not estop-

ped, could insist on forfeiture. Its adjuster had full knowledge of two of these grounds, and so knowing, his assurance given the insured, under the facts in evidence, would estop his principal from insisting on forfeiture by reason of these two known grounds. But there were two other grounds upon which it could rely for forfeiture, of which neither it nor its adjuster was aware at the time the insured was led to believe the policy would be paid. It could not, under this state of facts, be held to have waived, nor be estopped from asserting, a ground of forfeiture of which it was ignorant."

Section 1 of the record warranty clause provided that a complete itemized inventory of stock must be taken at least once in each calendar year, and, if none had been made within 12 months prior to issuance of policy, then that same be made within 30 days thereafter, etc. Section 2 provided that insured must prepare and keep a set of books showing all business transacted, including all purchases, sales, and shipments, both for cash and on credit. The same or similar provisions appear in the policy sued upon in the instant case.

We have no way of ascertaining just to what extent the evidence in the two companion cases above referred to is identical with or similar to that in the case before us. Judge Bishop found that there was "no evidence to indicate that either the adjuster or the insurance company knew that sections 1 and 2" had not been complied with. Clearly then those cases are not conclusive of the case before us, unless the evidence is likewise lacking in the instant case on the same issue.

[16-18] In this case the question as to whether the insured had failed to comply with sections 1 and 2 of the policy, or, if it had not, whether the Insurance Company or its adjuster had knowledge of such failure prior to the date of the alleged waiver, was not submitted to the jury. In the absence of that, it will be presumed that the trial court's finding on all necessary issues was such as to support the judgment. Was there any evidence to sustain such finding? J. R. Stitt testified that, on account of operating on small capital, he took an inventory of the stock practically every day and kept same in his desk. He also testified in detail as to how books, tickets, and slips were kept which reflected with reasonable accuracy the stocks coming into and going out of the place of business. The trial court may have concluded, after hearing all this evidence, that the insured had substantially complied with sections 1 and 2 of the policy. But, whether the insured had done so or not, it was incumbent upon the Insurance Company to show a noncompliance before it was entitled to a forfeiture. Buckalew knew that part of the books and invoices had been destroyed, and

that those saved were insufficient to show the loss. He went carefully through everything that was preserved, first with Egan's daughter, who was hostile to the insured, then with the bookkeeper and with Stitt. Everything was explained to him in detail, and Stitt twice subjected himself to a sworn examination. Stitt testified that the next morning after the fire Buckalew told him "that he represented the insurance companies as adjuster and he wanted to arrive at the amount of our loss, and he asked me about our books, invoices, and so forth." Stitt further testified that, on the same occasion, "I explained to him that we did not have a complete set of invoices of our stock of merchandise on hand, nor an inventory."

We think it reasonably appears, therefore, that instead of Buckalew not knowing that sections 1 and 2 of the record warranty clause of the policy had not been complied with, if, in fact, they had not, he was informed of practically everything that had or had not been done, and knew on December 19, 1914, when he agreed to pay the policy, of whatever breach of those sections the insured had been guilty. So instead of there being "no evidence" in the instant case of facts on which waiver could be predicated, as was found to obtain in the two companion cases recently decided and above referred to, we think there was sufficient evidence to sustain a finding of waiver. This distinguishes the case before us from those relied upon by plaintiff in error in its motion for rehearing.

The motion is accordingly overruled.

Overruled.