## SOUTHERN UNDERWRITERS v. LOOKADOO et al.

### No. 5323.

Court of Civil Appeals of Texas.
Texarkana.

March 9, 1939.

Rehearing Denied March 16, 1939.

Battaile, Burr & Holliday, of Houston, for plaintiff in error.

Neal Powers, of Tyler, and Raymond Allred and Renne Allred, Jr., both of Dallas, for defendants in error.

JOHNSON, Chief Justice.

This suit was filed by appellant, The Southern Underwriters, to set aside an award of the Industrial Accident Board in favor of Alta Lookadoo and Charles G. Lookadoo, the widow and minor child of Charles W. Lookadoo, deceased, whose death occurred on February 18, 1935, while engaged in the duties of his employment with Friar Topping & Refining Company, in a fire that consumed the company's office, storeroom, and laboratory. Defendants answered and by cross action sought judgment of the court against plaintiff as the alleged workman's compensation insurance carrier for said Friar Topping & Refining Company. Trial to the court without a jury resulted in judgment for defendants on their cross action. The Southern Underwriters has appealed.

Appellant contends that the policy issued by it to Friar Topping & Refining Company had been rendered void and of no effect prior to Lookadoo's death, by virtue

of a sale by one of the partners composing the partnership firm of Friar Topping & Refining Company of his interest in the partnership property to his copartners, without appellant's consent thereto endorsed on the policy.

■ Appellant issued its policy of workman's compensation insurance covering the employees of "Friar Topping & Refining Company" for the contract period of one year, from April 24, 1934, to April 24, 1935. The required advance deposit of $225 on the premium was made and the policy became effective. Appellant thereafter regularly audited the monthly payroll account of Friar Topping & Refining Company and collected the monthly premiums due thereon, including the month of February 1935, and thereafter until final audit and payment of all premiums due under the policy. The policy shows that the Friar Topping & Refining. Company was a "copartnership" but it does not name any of the partners. The evidence shows that at the time the policy was issued, April 24, 1934, the partnership of Friar Topping & Refining Company was composed of Jack Grupell, Joe Gold, Morris Antwell and Pat Frailey. It was further shown that on February 6, 1935, twelve days before Lookadoo was burned, Pat Frailey conveyed his interest in the partnership property to his copartners, Jack Grupell, Joe Gold, and Morris Antwell. It is not claimed that Pat Frailey's sale of his interest in the partnership property to his copartners effected any change in the manner of operating the business, or that it was calculated to increase the risk, nor is it claimed that the particular personnel of the partnership was relied on or formed any inducement influencing issuance of the policy, nor is it shown in the policy or in the application therefor or in the evidence, that appellant knew or made any investigation as to who composed the partnership at the time it issued the policy. Appellant's contention is based solely upon the legal effect to be given in construing the following provision contained in the policy: "No assignment of interest under this contract shall bind the carrier unless the consent of the attorney shall be endorsed thereon." There was no endorsement on the policy showing the attorney's consent to Pat Frailey's sale of his interest in the partnership property to his copartners. It is contended by appellant that the quoted

provision contained in the policy prohibiting "assignment of interest under this contract" should be construed as intending to include and apply to a sale by one partner to his copartners of his interest in the partnership property, and as intending that such a breach should of itself have the effect of rendering the policy void. Appellant cites Traders' & General Ins. Co. v. Emmert, Tex.Civ.App., 76 S.W.2d 208, and like cases, holding that such a provision in the policy of compensation insurance applies to and prohibits the sale of a partner's interest in a partnership property to a third party or stranger to the insurance contract. But the question here presented, as to whether such a provision in a policy of compensation insurance, applies to a partner's sale of his interest in the partnership property to his copartners, does not appear to have been passed upon by our courts. The cases, holding that such a provision in a policy of compensation insurance applies to and prohibits a sale by a partner of his interest in the partnership property to a stranger, are in accord with the construction and effect given by our courts to such a provision when contained in a policy of fire insurance. Mechanics' & Traders' Ins. Co. v. Davis, Tex.Civ.App., 167 S.W. 175. But in construing such a provision when contained in a fire insurance policy our courts have held that a sale by one partner to his copartners of his interest in the partnership property is not such a transfer of interest, by sale or otherwise, as will avoid a policy so conditioned. Texas Banking & Ins. Co. v. Cohen, 47 Tex. 406, 26 Am.Rep. 298. That case has been followed by this court in German Alliance Ins. Co. v. Ft. Worth Grain & Elevator Co., 257 S.W. 273, reversed on other grounds in Tex.Com.App., 269 S.W. 430, and by the Austin Court of Civil Appeals in Germania Fire Ins. Co. v. Ft. Worth Grain & Elevator Co., 271 S.W. 256, reversed on other grounds in Tex.Com.App., 274 S.W. 123, and such construction so placed upon the proviso is in accord with the great weight of authority. 26 C.J. 236; Couch on Insurance, Sec. 1017. No reason has been presented, and we do not see any just reason, why a different construction should be placed upon the provision when placed in a contract of compensation insurance than when placed in a contract of fire insurance. It seems more reasonable to conclude that by use of the provision in

the contract, without declaring a different purpose, it was intended to have a like effect as that previously given by our courts to similar provisions appearing in contracts relating to the subject matter of insurance. Therefore, upon authority of Texas Banking & Ins. Co. v. Cohen, supra, and the decisions following the Supreme Court in that case, we overrule appellant's contention.

Appellant further contends: (1) That appellees' pleading restricted the trial court in computing Lookadoo's average weekly wage solely to the method provided in subsection 2 of Article 8309; and (2) that the evidence was insufficient to compute Lookadoo's average weekly wage under said subsection 2, in that, it is contended, the evidence fails to singularly designate an employee as distinguishable from employees of the same class, as Lookadoo, working substantially the whole of the immediately preceding year in the same or similar employment in the same or neighboring place. We do not sustain this contention. Appellant makes no contention but that the pleading was sufficient, if supported by evidence, to authorize computation of the deceased's average weekly wage under subsection 2. The question therefore is as to whether the evidence was sufficient to support the judgment of the court. The evidence shows that at the time of his death Lookadoo was employed as plant superintendent for Friar Topping & Refining Company; that he had worked in that employment since sometime in the preceding September, or for about five months prior to his death; that he received a salary of $175 per month, but that at the time of his death there was a temporary suspension in operations of the plant, during which time he was receiving $150 per month as superintendent of the plant. Ralph Coehn testified:

"Q. Are you familiar with the usual and customary wage rate paid employees, employed as plant superintendents in the East Texas field for the year, calendar year, the last twelve months preceding February 18, 1935? A. I had that same position myself.

"Q. Do you know what it was? A. Yes, sir.

"Q. Are you familiar with that wage rate? A. Yes, sir.

"Q. What was it? A. Approximately $175."

Mrs. Alta Lookadoo testified:

"Q. What was he (Lookadoo) being paid as plant superintendent? A. $175 per month.

"Q. $175 per month? A. Yes, sir. That was the last check he ever got—$175 paid in full for a month's work.

"Q. Do you know what was the usual and customary wage paid employees in the East Texas field doing the work Mr. Lookadoo was doing for a year preceding his death? A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

"A. I have a brother-in-law doing the same work.

"Q. What was the wage? A. $175 a month."

Upon this testimony the court awarded weekly compensation rate of $20 per week. We think the evidence was amply sufficient to support the judgment.

The judgment is affirmed.