Zimmerman, J.
 

 Was a directed verdict for the defendant proper under the evidence presented?
 

 Claims of nonliability under insurance contracts are not favored by the courts; and this court on several occasions has refused to declare policies of insurance avoided because of a change in status of the insured property or the insured.
 

 Thus, in
 
 West
 
 v.
 
 Citizens’ Ins. Co.,
 
 27 Ohio St., 1, 22 Am. Rep., 294, the holding was that a policy of insurance issued to a mercantile partnership on a stock of goods owned by the firm, which contained no provision limiting or restricting alienation of the property, was not avoided by a sale by one partner of his interest to his copartners, who continued the partnership business.
 

 
 *509
 
 And in
 
 Blackwell
 
 v.
 
 Ins. Co.,
 
 48 Ohio St., 533, 29 N. E., 278, 14 L. R. A., 431, 29 Am. St. Rep., 574, it was held that a policy of insurance on property issued to an individual, which contained a provision to the effect that a sale or transfer of the property insured shall forfeit the policy, was not rendered inoperative and unenforceable by the formation of a partnership composed of the individual policyholder and another, which partnership took over the insured property.
 

 By its terms, the contract of insurance in the instant case was between The Home Indemnity Company and Empire Coin Machine Exchange and/or Gilbert Distributing Company. The use of the fictitious or assumed name, Empire Coin Machine Exchange, etc., in the policy, instead of the names of the individuals composing such concern evidenced an intent on the part of the insurer to insure the unincorporated body known by the given designation, no matter how constituted, rather than the individuals who at the time of the issuance of the contract comprised such body.
 

 Moreover, Kitt alone was the person on whom the defendant relied in issuing the policy and he was half-owner and manager of the business of the named insured at all times involved. After the policy was issued, no change in the character of the business conducted by the insured occurred and, so far as appears from the evidence, there was no increase in the risk assumed by the defendant.
 

 Under these circumstances it is difficult to discover any sufficient reason why those comprising the organization insured could not, when a loss occurred during the life of the policy, claim the benefits conferred thereby. See 45 Corpus Juris Secundum, 384, Insurance, Section 586, and
 
 Southern Underwriters
 
 v.
 
 Lookadoo
 
 (Tex. Civ. App.), 125 S. W. (2d), 1090. Compare, also, for its reasoning, the dissenting opinion of McArthur, J., in
 
 Germano
 
 v.
 
 Gresham Fire & Accident
 
 
 *510
 

 Ins. Soc., Ltd.
 
 (1924), Viet. L. R., 592, 13 British. Ruling Cases, 157, in which the old English case of
 
 Barclay
 
 v.
 
 Lucas
 
 (1783), 1 T. R., 291, note a, 99 English Reprint, 1100, note, 12 English Ruling Cases, 470, is interestingly discussed.
 

 The case of
 
 Barclay
 
 v.
 
 Lucas, supra,
 
 was an action of debt on a bond. The bond was given to secure the fidelity of an employee of a partnership. After the delivery of the bond a new partner entered the firm and thereafter the bonded employee received certain moneys for which he failed to account. Defendant contended in effect that when the new partner entered the firm the bonded employee ceased to be in the service of plaintiffs and was from then onward in the service of the new partnership, and hence the moneys he received and failed to account for were not received by him while in the service of the plaintiffs within the meaning of those words in the bond. For the plaintiffs it was argued that ‘ ‘ that circumstance cannot vary the obligation, because this bond was given to secure the fidelity of the clerk to the plaintiffs’ banking-house, rather than to the plaintiffs in their individual capacity. ’ ’ The court agreed with such latter contention and rendered judgment for the plaintiffs. In reaching such conclusion, Lord Mansfield, C. J., expressed the opinion that “this is a security to the house of the plaintiffs, and no change of partners will discharge the obligor.” And Buller, J., remarked: “His bond appears on the face of it to be a security to the house, and not to the persons of the plaintiffs.”
 

 In the case of
 
 Hagan
 
 v.
 
 Scottish Ins. Co.,
 
 186 U. S., 423, 46 L. Ed., 1229, 22 S. Ct., 862, the Supreme Court of the United States held, in substance, that where by the wording employed the apparent intent of an insurance contract is to protect the interests of those who may be concerned when a loss occurs, the contract will be so construed and enforced upon the happening of a loss covered by the contract.
 

 
 *511
 
 It is firmly established that a contract of insurance prepared by the insurer will, in the event of a controversy over an ambiguity in its meaning, be given, if it can reasonably be done, an interpretation favorable to the insured to afford the protection for which a premium has been paid. See 22 Ohio Jurisprudence, 340, Section 185, and
 
 Home Indemnity Co., New York,
 
 v.
 
 Village of Plymouth,
 
 146 Ohio St., 96, 101, 64 N. E. (2d), 248, 250.
 

 We are cognizant of the case of
 
 Black
 
 v.
 
 Alberry,
 
 89 Ohio St., 240, 106 N. E., 38, and consider it distinguishable from the instant one in that there a contract was made with reference to named individuals as partners and not with respect to the partnership in its fictitious or assumed name.
 

 In the writer’s opinion another reason exists why a directed verdict for the defendant was unauthorized.
 

 After the defendant received a statement of loss it caused an investigation of such loss to be made and later under date of June 13, 1947, in a written communication addressed to “Empire Coin Machine Exchange and/or Gilbert Distributing Co.,” said:
 

 “In accordance with the privilege granted the underwriter, we hereby notify you of our intention to terminate our liability under this bond, such termination to take effect July 18, 1947.”
 

 Surely, this notification sent after investigation of the loss can be reasonably interpreted as an admission on the part of defendant that it recognized the efficacy of the policy as to Empire Coin Machine Exchange, etc., from the date of issuance and delivery to July 18, 1947, especially since it then knew or in the exercise of due diligence should have known of a cause or causes which might have relieved it from liability and since it did not return any portion of the premium covering such period.
 

 It should be noted that it has always been a principle of the law of insurance that forfeitures are not looked
 
 *512
 
 upon with favor, and courts haYe ever been prompt to seize upon any circumstance that indicates an election to waive the forfeiture of a contract of insurance. 16 Appleman on Insurance Law and Practice, 600, Section 9082.
 

 If upon another trial of this action it develops that other questions are important or controlling, such as whether there were material misrepresentations in the application for the policy inducing its issuance; whether the alleged dishonest employee responsible for the claimed loss was in truth an employee of the named insured within the meaning of the terms of the policy when the loss took place; the amount of the loss for which defendant might be liable; and whether the designated insured was engaged in an unlawful business which might have the effect of vitiating the policy (see 44 Corpus Juris Secundum, 1007, Insurance, Section 242); such questions would be ones of fact to be submitted to a jury under appropriate instructions.
 

 The judgment of the Court of Appeals is accordingly reversed and the cause remanded to the Court of Common Pleas for further proceedings.
 

 Judgment reversed.
 

 Matthias, Hart, Stewart, Turner and Taet, JJ., concur.