NAPIER *v.* BANKS ET AL.

(No. 21921—Decided August 16, 1968.)

Common Pleas Court of Madison County.

*Messrs. Volkema, Redmond & Post* and *Messrs. Finneran, Finneran & Finneran,* for plaintiff.

·· *Mr. Roger C. Stridsberg,* for defendant Buckeye Union Casualty Company.

BAYNES, J. This cause came on to be heard on a supplemental petition against the defendant Buckeye Union Insurance Company who had issued a policy of insurance to the defendant Delores Banks now McGregor who presently resides in the Virgin Islands.

I. The court finds the facts to be as follows:

Defendant Banks was the daughter of Mr. and Mrs. Frank Pennington. She was divorced from her husband on September 11, 1959. At and prior to that time she had resided in a rental property belonging to her Aunt Grace Huber located on the farms of Mrs. Huber and operated by Frank Pennington.

Delores Banks was having some financial difficulties and her aunt sought to rent the house to parties by the name of Miller. Mrs. Banks stored all her household goods in one room of the house, except for three appliances Millers used. Early in November 1960, she moved from the rented house to the residence of her parents, taking with her clothing, childrens' toys and perhaps a bed for her two-year-old son Tom who was with her. There is some conflict, but it is probable that her two other sons were with their father in Cincinnati at this time.

At and prior to the divorce Delores Banks was employed in Columbus, a distance of 27 to 30 miles away. In a deposition taken for the purpose of this hearing, and made a part of this record, on October 18, 1967, on cross-examination the following appears:

"Q. How would you describe the period you were eating and sleeping in your parents' home? A. Well, it was a tentative place to stay, like a stopover, until I found something I really wanted. I couldn't be taking something that wouldn't suit my budget for the necessary place to get back and forth to work.

"Q. What was your intention, then, when you did

leave your aunt's house? A. Well, my intention was, as soon as I found something; why, I would take it, make things easier for myself and, like I said, I would move to Columbus."

Delores Banks was driving her father's Plymouth on December 26, 1960, and had an accident which resulted in a judgment against her. All of the judgment, but $10,000 was satisfied by the insurer of her father. She had a policy of insurance with defendant Buckeye Union, issued in connection with a Cadillac vehicle she owned.

This policy provided protection Part 1:

"B. (b) with respect to a non-owned automobile;

"(1) the name insured;

"Definitions under Part 1;

" 'Relative' means a relative of the named insured *who is a resident of the same household*;

" 'Non-owned automobile' means an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative . . ." (Emphasis ours.)

As a result of injuries Delores Banks suffered, and another physical ailment following the injury, she ultimately moved to Columbus sometime in the spring of 1961. Tom, the youngest child, has been in the custody of his father since a day or two after the accident.

The Plymouth vehicle owned by defendant Banks' father, though driven by her from time to time was not furnished for the regular use of the defendant Banks. That the reason for its use on December 26, 1960, was because of parked position accessibility.

Such discrepancies, as whether and to what extent Delores Banks contributed to the household expenses, prior to December 26, 1960, are conceded by counsel for Defendant Buckeye Union to be immaterial and with this conclusion we agree.

## II Discussion.

Counsel agree that the issue is: Whether or not the defendant Delores Banks was a resident of her father's, Frank Pennington's, household, *i. e.* the same household, on December 26, 1960?

Both counsel agree, and we have not been able to find, any reported case in Ohio which has interpreted and applied the phrase in question.

The supplemental petition filed against Nationwide in this case made new Ohio law. *Napier v. Banks* (1967), 9 Ohio App. 2d 265, m. c. o. 5-24-67 No. 40805. We have no doubt this phase of the case will also, ultimately, be reported.

Both counsel also agree that the polestar of construction, relating to insurance policies, is, in the absence of explicit wording or necessary implication, a contract of insurance must be construed most favorably to the insured in order to effectuate its obvious purpose. The language used must be given its ordinary and commonly accepted meaning.

To effectuate its purpose, that is liability protection for Delores Banks, the insured, an interpretation would be required which would not find her to be a "resident of the same household." For if defendant Buckeye Union is not liable to respond to plaintiff's judgment, that liability falls totally and exclusively on Delores Banks.

Counsels' approach is to interpret the words resident and household separately and then combine the meanings. They each rely on law dictionary and Ohio authority. Our approach is to ascertain the definition of the totality of the phrase. Even in the separate approach in ordinary understanding a residence can be a temporary or permanent one. The interpretation on defendant Buckeye Union's behalf makes no distinction and that of plaintiff's does. The facts in this case lead to but one conclusion and that is Delores Banks was, on December 26, 1960, and subsequently, only a temporary resident at her parents' home.

It is suggested by Buckeye Union's counsel, which is supported by some authority, that the reason for the phrase is to avoid and prohibit making one policy of insurance provide coverage for a number of automobiles without premium coverage on all of them. This probably is the purpose insofar as insurance companies are concerned,

but it does not follow that it is the commonly accepted meaning of the phrase. Nor do the facts in this case support the purpose because Delores' father, Frank Pennington, paid his premium to one insurer and Delores had paid her premium to another insurer, the Defendant Buckeye Union.

We have reviewed the meaning of the word "household," 10 Words and Phrases and the phrases "resident of the household," "member of the household" and "resident of the same household," 37 Words and Phrases. It is most interesting to see the various situations in which interpretation of these phrases has been required.

There are two cases which we find are comparable on their facts to the instant case. We consider their conclusions compelling. In each of these cases the phraseology of the nonowned vehicle exclusion is: "or a *member* of the same household," or "member of the household." This compares to the definition of "relative" in the Buckeye Union policy, which is: "a *resident* of the same household." For the purpose of construction comparison we perceive no semantic difference in the terminology of "member" in the one phrase and "resident" in the other, or the omission of the word "same."

The facts in *Lumbermans Mutual Casualty Co.* v. *Pulsifer* (1941). 41 F. Supp. 249, were as follows: Louis was the son of Elton Pulsifer. He was 25 years old, married and the father of one child. He was out of work and in financial distress and hearing of employment prospects came with his wife and child to his father's home on December 22, 1940. He obtained employment in about two weeks and sought to rent a house which he did not do until the following June. Louis brought to the father's home comparable items to those that Delores brought to her father's home. They stored the bulk of their household goods elsewhere. Otherwise the two families used the general household items of the father and mother and contributed to food and some other of the household expenses.

Louis, the father, drove Elton's vehicle on March 13, 1941, and had an accident causing a third party injury.

Plaintiff sought a declaration that its policy did not cover the liability of Louis while he was operating Elton's vehicle because they were both members of the household. In its conclusion of law the court said, pp. 251-252:

"Here two families came together temporarily until the newcomer could find another place of abode, which was expected to be a matter of only a few weeks. There was no one head of both groups; no permanence; no pursuit of a common object; no such union of the two families as would make them one. It was a temporary arrangement for the convenience of the son and his family while getting located elsewhere. Each family retained its own organization under its own head and did not merge to make one family or one household in any such way as the word is used in the policy.

"It should not be overlooked that the language of this endorsement was framed by the company itself which, by definition or otherwise, could have made the term 'member of the household' less ambiguous."

Judgment against plaintiff's prayer for declaration was entered.

The *Lumbermans case* was cited in *Giokaris* v. *Kincaid* (Mo. 1960), 331 S. W. 2d 633, 86 ALR 2d 925, 933, 935. In this case the facts were: A policy was issued on his vehicle to Michael E. Kincaid who resided with and was the son of Don C. and Virginia L. Kincaid. The elder Kincaids had a policy on their vehicle which also provided protection to Michael.

Mrs. Hutchinson was a grandmother of Michael and the mother of Virginia Kincaid. Following the death of Mr. Hutchinson, Mrs. Hutchinson was financially unable to maintain the apartment where they had lived and was unable to find another suitable place. Mrs. Kincaid invited her mother to live with them until she found a place. Mrs. Hutchinson brought only a few personal things to the Kincaid home and her automobile. She contributed $40 a month to the household expenses. With the exception of the room in which she slept she used the general facilities of the home together with the Kincaid family.

Mrs. Hutchinson came to the Kincaid home sometime

after March 1955 and moved to a small apartment in September 1956. On January 5, 1956, Michael used his grandmother's automobile and had an accident causing injury. The insurer, a party to a garnishment action, following judgment contended it was not liable because the grandmother was, "a member of the same household," and the operation of her vehicle was excluded from policy protection of both of the Kincaid vehicles.

The trial court held that Mrs. Hutchinson was residing temporarily with the Kincaids and was not a member of the same household as Michael within the meaning of the insuring agreements of the insurance policies. The judgment of the trial court was affirmed by Division 2 of the Missouri Supreme Court.

The statement in the *Giokaris* opinion, 86 A. L. R. 2d 925, 934, if policy terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability are construed most strongly against the insurer is the general rule and the rule of interpretation in Ohio. 30 Ohio Jurisprudence 2d 226, Section 215; *Kitt* v. *Home Indemnity Co.* (1950), 153 Ohio St. 505, paragraph one of the syllabus; *Unger* v. *Guarantee Reserve Life Ins. Co.* (1957), 166 Ohio St. 409; *Travellers Ins. Co.* v. *Auto-Owners Ins. Co.* (1964), 1 Ohio App. 2d 65, paragraph one of the syllabus.

### III Conclusions of Law

We conclude under the facts of this case and the law that Delores M. Banks on December 26, 1960, was residing temporarily in the home of her parents, Mr. and Mrs. Frank Pennington. Delores M. Banks was not a member or resident of the same household as Mr. and Mrs. Frank Pennington within the meaning of the contract of insurance that day existing between Delores M. Banks and the Buckeye Union Casualty Company. That the non-owned automobile belonging to Frank Pennington and the operation of it resulting in a pending judgment against Delores M. Banks is an obligation of the defendant Buckeye Union Casualty Company under the terms and to the extent of coverage disclosed by the policy daily.

A judgment entry is accordingly, concurrently filed and entered.